**MOORE et al. v. MARLAND OIL CO. OF TEXAS. (No. 1086-4978.)**

Commission of Appeals of Texas, Section A. June 13, 1928.

**1. Mines and minerals ⬦�⟋74—Assignment of oil leases subject to contemporaneous contract held to convey leasehold estate.**

Assignment of oil leases subject to contemporaneous written contract giving assignee option to reconvey after geological survey *held* to convey to assignee at once leasehold estate in lands.

**2. Mines and minerals ⬦➟74—Assignee of oil leases, not reconveying after geological survey within time specified, was bound to pay assignors purchase money and drill test well under contract, notwithstanding verbal declaration of purpose to surrender.**

Assignee of oil leases, not making or tendering reconveyance after geological survey until after its option to do so had expired, remained bound to pay assignors purchase money and to drill test well as provided in contract, notwithstanding it had made verbal declaration, after completing geological survey, of its purpose to surrender leases.

**3. Mines and minerals ⬦➟74—In action by assignors of oil lease in which party claiming interest intervened as party plaintiff, assignee was not entitled to abatement of consideration for assignment.**

In action by assignors of oil lease against assignee for purchase money, in which party claiming one-sixth interest in leases intervened as party plaintiff, and where judgment was rendered in favor of assignors and intervener, assignee was in no danger of eviction at hands of intervener and was not entitled to rescind or to an abatement of consideration for assignment.

**4. Action ⬦➟62—Action for damages for failure to drill test well before period for drilling expired was premature.**

Action for damages against assignee of oil lease for failure to drill test well, commenced before 90-day period for drilling expired, was premature.

**5. Action ⬦➟65—Cause of action arising subsequent to commencement of suit, and not declared on after it arose, cannot furnish basis for recovery.**

A cause of action arising subsequent to commencement of suit, and not declared on after it has arisen, cannot furnish basis for recovery.

**6. Mines and minerals ⬦➟78(7)—Assignee's acts declaring purpose to surrender leases and tendering reconveyance were not anticipatory breach of contract to drill test wells within specified time.**

Acts of assignee of oil lease declaring its purpose to surrender leases and in subsequently tendering reconveyance were not tantamount to repudiation of liability under contract to drill test wells, and assignors could not recover for anticipatory breach before time for drilling well expired.

Error to Court of Civil Appeals of First Supreme Judicial District.

Action by W. C. Moore and another against the Marland Oil Company of Texas, in which Perryman Moore intervened. Judgment for plaintiff was reversed and rendered (297 S. W. 658), and plaintiffs bring error. Judgment of the Court of Civil Appeals reversed, and judgment of the district court in part reformed and affirmed, and in part reversed and remanded.

Bryan, Colgin, Suhr & Bering and A. D. Dyess, all of Houston, for plaintiffs in error.

Baker, Botts, Parker & Garwood, of Houston, for defendant in error.

HARVEY, P. J.  On May 15, 1925, W. C. Moore and L. H. Dunn held oil and gas leases on various tracts of land in Wharton county. On that date they executed to the Marland Oil Company of Texas an instrument of assignment. The terms of the instrument are such as to support a present conveyance of the leases and the leasehold estate in said lands to the oil company. The instrument recites a cash consideration of $10. Contemporaneously with the execution and delivery of the instrument of assignment Moore and Dunn, as parties of the first part, and the oil company, as party of the second part, executed a contract in writing, which provided that the instrument of assignment was subject to the terms and provisions of said contract. The contract, among other provisions, provides for the execution and delivery of the assignment of the leases by Moore and Dunn to the oil company at the time of the execution of such contract; that the oil company pay to Moore and Dunn the sum of $2,000 cash, and, on or before four months from date of the contract, make a geological survey of the lands. And section 6 of the contract was in these words:

"(6) It is further agreed by and between the parties hereto, that after party of the second part shall have completed its geological survey of the lands above described, as hereinabove provided for, and on or before four (4) months from the date hereof, party of the second part shall have the right, privilege, and option to elect whether or not it will retain the ownership of said oil and gas mining leases; and, in the event that party of the second part should elect to retain the said oil and gas mining leases, then, in that event, party of the second part agrees to pay to parties of the first part the sum twenty-five thousand and no/100 ($25,000.-00) dollars cash in addition to the two thousand and no/100 ($2,000.00) dollars cash consideration hereinbefore specified; and, in addition to the payment of the said twenty-five thousand and no/100 ($25,000.00) dollars cash, party of the second part agrees that it will, on or before ninety days (90) after the expiration of the four (4) months' period above specified, commence operation for the drilling of a test well for oil and gas mining purposes on the land above described, and drill said test well with due diligence and dispatch, and without unnecessary delay, to a depth of at least three thousand (3,-

000) feet, unless cap rock or salt is encountered at a lesser depth in the said test well, or unless oil or gas is found in paying quantities in said test well at a lesser depth.

"In the event that party of the second part shall elect not to retain its interest in and to said oil and gas mining leases after the completion of its geological survey of the lands covered by said leases, then, in that event, party of the second part shall, within the four (4) months' period above specified, reassign and reconvey unto parties of the first part, all its interest in and to the oil and gas mining leases and leasehold estates above described and thereupon be relieved from further liability thereunder."

The terms of this contract are set out in the opinion of the Court of Civil Appeals reported in 297 S. W. 658, to which reference is here made.

The oil company made the geological survey as provided in the contract, and thereafter, and within four months from the date of the assignment and contract, decided to surrender the leases back to Moore and Dunn, and verbally notified the latter of this decision. Several days after the said four months' period had expired, the oil company tendered to Moore and Dunn a written reconveyance of the leases and leasehold estate. Moore and Dunn declined to accept such reconveyance, and demanded the payment of the $25,000 and the drilling of the test well as provided in section 6 of the contract. The oil company failed to make the payment demanded, and thereupon Moore and Dunn brought this suit against the oil company to recover damages in the sum of $60,000 on account of the alleged failure of the oil company to pay the $25,000 purchase money and drill the test well. The plaintiff's original petition in the suit was filed on November 10, 1925, and was never amended. The trial court rendered judgment in favor of the plaintiffs in the sum of $55,000. On appeal the Court of Civil Appeals reversed this judgment and rendered judgment for the oil company. This statement which we have made, though not setting out all matters in detail, is sufficient for a general understanding of the matters discussed in this opinion.

[1] The instrument of assignment had effect to convey to the oil company, at once, the leasehold estate in the lands, unless a contrary intention of the parties is to be found in the provisions of the contemporaneous written contract. The terms of this contract, we think, disclose no such contrary intention. That the purpose of the parties to the instrument of assignment, of which the contract forms a part, was to effect a present conveyance of the leasehold estate, is made plain by the provisions of section 6 of the contract, quoted above, and all other terms of the contract are consistent with that purpose. In that section it is expressly provided that the oil company had the right to elect whether or not it would "retain the ownership" of the property, and,

in case the company elected not to retain same, a reconveyance should be made. These provisions would be utterly useless, if, as contended by the oil company, the instrument of assignment did not operate as a present conveyance of the property purported to be conveyed by it. For in that case there could be no occasion for an election to "retain or not retain ownership," or for a reconveyance as stipulated in the contract.

[2] By the terms of section 6 of the written contract, the oil company became bound to pay to the assignors, as a part of the consideration of the leaseholds, the sum of $25,000 on or before four months from the date of the assignment, and to drill a test well, as provided in said section of the contract. These obligations of the oil company arose at the time, but performance thereof was subject to be avoided by the exercise of the option or right of election held by the oil company under that section of the contract. It is claimed that the verbal declaration by the oil company, after completing the geological survey, of its purpose to surrender the leases, constituted an election not to retain ownership within the purview of section 6 of the contract, and, as a consequence thereof, the oil company thereupon became released of its obligations above mentioned. The point of this contention is that the provision requiring a reconveyance by the oil company is but a covenant which the oil company was obligated to perform after the company had elected, in the manner it did, not to retain ownership of the property, and therefore a reconveyance was not requisite to an effectual election. The terms of the contract do not bear out this contention. Plainly the release of the oil company from its obligations to perform the consideration for the conveyance to it of the leasehold estate is, by the language of the contract, made to depend upon a reconveyance by the oil company during the four months' period named in the contract. The mere decision of the oil company to surrender the leasehold estate, and notice thereof to the assignors, did not have effect to reinvest the assignors with the leasehold estate, and therefore could not, under the terms of the contract, operate to relieve the oil company of its obligations under the sale. No reconveyance was made or tendered by the oil company until the option to do so had expired, consequently the oil company remained bound to pay the $25,000 purchase money, and to drill the test well, as provided in the contract. Guss v. Nelson, 200 U. S. 298, 26 S. Ct. 260, 50 L. Ed. 489.

[3] Perryman S. Moore, son of W. C. Moore, requested and was granted leave to intervene as a party plaintiff herein. In his petition for intervention he claims to have owned an undivided one-sixth interest in the oil and gas leases covered by the assignment to the oil company, and that he is entitled to one-sixth of any amount recovered

in the suit. He adopts the pleadings and the prayer of W. C. Moore and L. H. Dunn. The oil company did not plead failure of title to the one-sixth interest claimed by Perryman Moore, or any facts showing danger of eviction by a paramount title held by the latter, or that the sale was induced by fraudulent representations on the part of the assignors. L. H. Dunn testified on the trial that, though Perryman Moore's name did not appear in the leases, he had a one-sixth interest in the subject-matter and the contract with the Marland Oil Company. This is all the proof relating to the interest claimed by Perryman Moore, or to the nature of his claim. The pleadings of all the parties and the undisputed proof show that Perryman Moore conducted the negotiations with the oil company, and gave active aid in bringing about the assignment of the leases to the company. The judgment for $55,000 that was rendered by the trial court was in favor of W. C. Moore, L. H. Dunn, and Perryman Moore, jointly, all of whom are designated in the judgment as plaintiffs. No complaint is made of this judgment by either of these three parties. Under these circumstances, the oil company is in no danger of an eviction at the hands of Perryman Moore, and is not entitled to a rescission or to an abatement of the consideration for the assignment. Milby v. Hester (Tex. Civ. App.) 94 S. W. 178, and authorities there cited.

[4, 5] Complaint is made by the oil company of the immaturity of the plaintiffs' alleged cause of action with respect to the drilling of the test well. The $25,000 purchase money became payable at the expiration of four months from May 15, 1925, the date of the assignment, but the oil company had 90 days after the expiration of this four months' period within which to commence operations for the drilling of the test well. The plaintiff's petition upon which the trial was had was filed before this 90-day period expired. At that time no cause of action had accrued to the plaintiffs on account of a breach of the oil company's obligation to drill the test well, for no breach of that obligation had occurred. The plaintiffs' suit on this cause of action was premature, and the trial court's judgment in that respect is erroneous. A suit cannot be maintained upon a cause of action which does not exist at the time the suit is commenced. A cause of action arising subsequent to the commencement of the suit, and not declared on after it has arisen, cannot furnish a basis for a recovery. Crook v. McGreal, 3 Tex. 487; Culbertson v. Cabeen, 29 Tex. 247; New York Life Ins. Co. v. English, 96 Tex. 268, 72 S. W. 58.

[6] The plaintiffs in error insist that an anticipatory breach of the oil company's obligation to drill the test well is shown by the evidence. A search of the record fails to discover evidence having that effect. The acts of the oil company in declaring its purpose to surrender the leases, and in subsequently tendering a reconveyance, are not tantamount to a repudiation of liability on the part of the oil company. These acts furnish evidence of a futile attempt of the oil company to accomplish a release of its obligations, but they fall short of establishing a fixed purpose not to perform those obligations.

We have considered all assignments of error presented in the Court of Civil Appeals by the defendant in error, and find no reversible error, except as has been stated above.

We therefore recommend that the judgment rendered by the Court of Civil Appeals in favor of the defendant in error be reversed; that the judgment of the trial court be so reformed as to allow recovery by the plaintiffs in error of the unpaid purchase money in the sum of $25,000, together with interest thereon at the rate of 6 per cent. per annum from September 15, 1925, and to the extent that such judgment is so reformed that it be affirmed; that in all other respects the judgment of the trial court be reversed, and the cause remanded.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and the judgment of the district court in part reformed and affirmed, and in part reversed and remanded, as recommended by the Commission of Appeals.

We approve the holding of the Commission of Appeals on the questions discussed in the opinion.