Tolar N. HAMBLEN et al., Appellants,

v.

PLACID OIL COMPANY et al., Appellees.

No. 3239.

Court of Civil Appeals of Texas.

Waco.

April 28, 1955.

Rehearing Denied May 26, 1955.

Andrews, Kurth, Campbell & Bradley, S. Eastland, Jr., Homer Mabry, Houston, for appellant.

Shank, Dedman & Payne, Dallas, B. B. Barber, Shreveport, La., for appellee Placid Oil Co.

Butler, Binion, Rice & Cook, Cecil N. Cook and James D. Smullen, Houston, for appellee John W. Mecom.

Barrow, Junell & Robertson, Houston, for J. H. Byerly, Jr.

Lester J. Settegast, Houston, pro se.

McDONALD, Chief Justice.

This is a suit filed by plaintiff Tolar N. Hamblen against defendants John Mecom and Placid Oil Company for $11,690.35, alleged to be the balance of the purchase price of an assignment of an oil, gas and mineral lease, which was assigned by Hamblen to Mecom. Defendants brought into the suit A. D. Hawkins and J. H. Byerly. Hawkins and Byerly filed pleadings to the effect that each owned a ⅓ interest in the cause of action asserted by Hamblen.

This case involves the construction of the provisions of an oil, gas and mineral lease covering 11,690.35 acres of land in Chambers County, together with a construction of the provisions of the assignment of this lease.

The original lease was executed by R. J. Barrow and others to plaintiff Hamblen on 19 July 1948, and provided, among other things, as follows:

"4. (a) If operations for drilling are not commenced on said land on or before 6 months from this date, this lease shall then terminate as to both parties *unless* on or before the expiration of said 6 months Lessee shall pay * * * Lessor * * * $4.00 per acre for the number of acres then covered by this lease and not surrendered as hereinafter provided, which shall cover the privilege of deferring commencement of drilling operations for a period of 12 months. Thereafter, upon the payment * * * annually the sum of $1.00 per acre for the number of acres then covered by this lease, and not surrendered as hereinafter provided, the commencement of drilling operations may be further deferred for successive periods of 12 months each during the primary term. * * * Lessee may at any time execute and deliver to Lessor * * * a release covering any portion of the premises and thereby surrender this lease as to such portion and be relieved of all obligations as to the acreage surrendered, and thereafter the rentals payable hereunder shall be reduced in the proportion that the acreage covered hereby is reduced by said release.

"4. (b) It is expressly agreed that said privilege of selecting acreage or commencing operations for the drilling of a well on said lease on or before the expiration of said 6 months, as provided above, may be further extended for additional months, not exceeding 12, by paying * * * the sum of 5¢ per acre for said 11,690.35 acres, and the expiration of the last extension, if any, shall mark the commencement of the 5 year period and shall be the anniversary date of said lease for rental payment purposes; provided, however, that Lessee shall have the right at any time on or before said selection date, or extension thereof, to select certain acreage which he desires to retain and to pay said selection bonus only upon such acreage, provided further that, not withstanding this selection provision, no such selection shall be effective unless Lessee selects at least 3000 acres. In the event Lessee begins operations for drilling a well prior to said selection date, or extension thereof, * * * Lessee shall if he elects to retain less than the whole of said acreage, give notice in writing to Lessor on or before said selection date, or extension thereof, of the acreage which Lessee elects to so select and retain under this lease. In either such event Lessee shall within a reasonable time after such selection deliver a good and sufficient recordable release as to that portion of said property which he elects to surrender."

"5. * * * If Lessee should drill a dry hole, this lease shall not terminate * * * if it is in the primary term and Lessee commences or resumes payment of rentals * * *."

Plaintiff Hamblen thereafter assigned this lease to defendant Mecom, which assignment provided:

"Assignee agrees, *as a part of the consideration herefor,* that he will pay Assignor *$1.00 per acre for each acre selected and retained under the provisions of Paragraph 4(a)* of said oil, gas and mineral lease, and will pay Assignor 5¢ for each 5¢ paid Lessor under the provisions of Paragraph 4(b) of such oil, gas and mineral lease."

Mecom thereafter transferred the lease to the Placid Oil Company.

The proof showed that Placid Oil Company paid the 5¢ per acre called for in Paragraph 4(b) of the lease, and the 5¢ called for in the Hamblen assignment for the months of January, February, March and April of 1949, and commenced drilling a well on 13 May 1949, which well was thereafter abandoned as a dry hole; and that Placid Oil Company started paying the $1 per acre rental called for in the lease on 3 May 1950 on all 11,690.35 acres and made payment each year thereafter to original Lessors down to and including April 29, 1953. No release of acreage has ever been tendered Lessors and the 5¢ and $1 per acre above referred to have been paid on all of the acreage.

It is the contention of plaintiff Hamblen that all 11,690.35 acres were selected and retained "and that for which reason he is entitled to the $1.00 per acre called for in the assignment executed by him to Mecom quoted supra"; while it is the contention of the defendants Mecom and Placid Oil Company that a proper construction of the original lease is to give the Lessee the privilege of selecting and retaining acreage *or* of commencing operations—and that no selection and retention of acreage was ever made, but that drilling operations were commenced instead, and for which reason the $1 per acre contended for by Hamblen has never and can never become due and payable.

Trial was to the court without a jury, which rendered judgment that plaintiff Hamblen and Hawkins and Byerly take nothing, from which judgment plaintiff Hamblen and Hawkins only appeal.

The dominant question for determination in this case is: How much acreage, if any, has been selected and retained (by Mecom or Mecom's transferee Placid) under the provisions of Paragraph 4(a) of the original Barrow lease?

Hamblen's assignment to Mecom provides that Mecom will pay Hamblen as a part of the consideration for the assignment the following: 1) $1 per acre for each acre selected and retained under the provisions of Paragraph 4(a) of the Barrow lease; and 2) 5¢ for each 5¢ paid Barrow under the provisions of Paragraph 4(b) of the Barrow lease.

To determine whether any, and if so what acreage was *selected and retained* under the provisions of Paragraph 4(a) of the Barrow lease, an analysis of this paragraph as well as of Paragraph 4(b) is necessary.

Stripped of all surplusage, Paragraph 4 (a) basically provides:

1) The lease terminates on 19 January 1949 if drilling is not commenced, *unless* Lessee pays $4 per acre on acres not surrendered by execution of a release (which defers drilling for 12 months).

2) Thereafter payment of $1 per acre on acres not surrendered defers drilling 12 additional months.

3) Lessee may at any time surrender acreage by delivery of *release* of acres surrendered.

Stripped of all surplusage, Paragraph 4(b) basically provides:

1) Privilege of selecting acreage or drilling before 19 January 1949 may be further extended for additional months by paying 5¢ per acre per month on all acres.

2) Lessee at any time before 19 January 1949 or extension thereof can select acreage and pay $4 per acre on acres selected.

3) If drilling commenced prior to 19 January 1949 or extension thereof, Lessee, *if he elects to retain less than all 11,690.35 acres, will give notice in writing.*

4) In either event Lessee shall deliver to Lessor a release as to that acreage he elects to surrender.

From the foregoing we conclude that under the provisions of Paragraph 4(a) acreage is *selected and retained* by failing to *surrender* acreage not desired. Since a *surrender* of acreage must be accomplished by delivery of a release (or at least be in writing), and since no release of acreage or notice in writing was ever given to Lessor, it necessarily follows that all 11,690.35 acres was retained or selected and retained.

The provisions in Hamblen's assignment to Mecom provided for the $1 per acre to be paid to Hamblen on each acre selected and retained under the provisions of Paragraph 4(a) of the Barrow lease—and *did not provide that Mecom would* pay Hamblen $1 for each $4 that was paid to Lessors. The provision for the payment of the $4 per acre to Lessors was not due Lessors if drilling be commenced by 19 January 1949 (or thereafter as 19 January 1949 should be extended by Paragraph 4(b). The $1 per acre was provided to be paid Hamblen by Mecom on all acres *selected and retained.*

The subject lease, in our view, was in form of a present conveyance of the leasehold estate *but* if the Lessee desired to keep any portion of the acreage less than the whole, he had the privilege or option to return certain of the acreage which he did not desire to keep. The Lessee could relieve himself of the obligations as to the returned acreage only by *releasing* the acreage which he did not desire to select in the manner provided in the lease. *In other words the Lessee had the entire leasehold purchased with an option to return a part thereof* by releasing same in writing. Not having released same in writing he must necessarily have *selected and retained* all. See Moore v. Marland Oil Co., Tex. Com.App., 7 S.W.2d 59.

It is our view that this record shows that the owners of the lease did select and retain every acre covered by the lease—and have maintained the lease in effect. All the acreage was selected under Paragraph 4(a) and retained by the drilling of a well, without surrendering any acreage. That it was the intent of the owners of the lease to select and retain *all* of the acreage covered by the lease is fully confirmed by the subsequent action of paying to the Lessor $1 for each acre on the rental paying date ensuing after drilling the initial dry hole well.

From the foregoing we answer the dominant question for determination—viz.: How much acreage had been selected and retained under the provisions of Paragraph 4(a) of the Barrow lease—to be that *all* acreage was selected and retained.

The dominant question presented having been resolved in favor of appellants, we now come to consider *3 further* questions presented by this record. These are: 1) Can plaintiff Hamblen recover the $1 per acre on the 11,690.35 acres sued for, or can he recover ⅓ only thereof, and Hawkins ⅓ thereof? 2) Can any recovery be had against defendants Mecom and Placid Oil Company jointly—or against defendant Mecom only? 3) Does the Texas Securities Act, Art. 600a, Vernon's R.C.S., or the Real Estate Dealers License Act, Art. 6573a, Vernon's R.C.S., have any application whatsoever to the case at bar?

As to the 1st further question raised by the record, that is whether plaintiff Hamblen can recover the $11,690.35 sued for, this record reflects that Hawkins and Byerly were partners of Hamblen in the purchase and sale of the Barrow lease; that Hamblen held the lease in his name but that true ownership was ⅓ in Hawkins, ⅓ in Byerly and ⅓ in Hamblen; that Hamblen would convey to Hawkins and Byerly their interest on request. Hawkins and Byerly by their pleadings in this case assert ownership of ⅓ each in the Barrow lease, and ask that a ⅓ interest in any recovery by Hamblen be accorded to them. The Trial Court rendered judgment against

Hamblen, Hawkins and Byerly. Byerly has not appealed. Hamblen and Hawkins have both appealed. We believe that plaintiff Hamblen is entitled to recover ⅓ of $11,690.35 and that Hawkins is entitled to recover ⅓ of $11,690.35. The rights of Byerly, he having not appealed, are not before this court.

■ As to the 2nd further question: Plaintiffs seek to hold the defendant Placid Oil Company liable on the assignment jointly with and additionally to defendant Mecom, contending that Placid Oil Company assumed and agreed to pay the obligation which is the subject of the suit against Mecom by virtue of the assignment from Mecom to Placid, dated 22 October 1948 and amended 12 April 1949.

There was no privity of contract between plaintiffs Hamblen or Hawkins and Placid Oil Company. Likewise there is no privity of estate between plaintiffs and Placid. When Hamblen traded with Mecom he reserved certain things. Subsequently Mecom traded with Placid and reserved certain things. Neither Hamblen nor Hawkins was a party to the Mecom-Placid trade. When Mecom transferred to Placid an interest in the Barrow lease, he reserved an overriding royalty interest. This transfer technically created a *sublease and not an assignment*. It is well settled in Texas that a sublease does not create privity of estate between the subtenant and the original lessor. Davis v. Vidal, 105 Tex. 444, 151 S.W. 290, 42 L.R.A.,N.S., 1084; Panhandle & S. F. R. Co. v. Wiggins, Tex. Civ.App., Amarillo, 161 S.W.2d 501, writ dismissed W.M.; Gray v. Taylor, Tex.Civ. App., Fort Worth, 138 S.W.2d 891, writ dismissed, C.J.; Arcadia Refining Co. v. Cook, Tex.Civ.App., 146 S.W.2d 767, writ dismissed, C.J., and Kenyon v. United Salt Corporation, Tex.Civ.App., Galveston, 129 S.W.2d 402.

It is obvious under these authorities that appellants have failed to plead or prove a cause of action against Placid Oil Company under any hypothesis. Placid Oil Company never agreed to pay the appellants, or either of them, anything. Placid Oil Company is not under contractual relationship with appellants. There exists neither privity of contract nor privity of estate between Placid Oil Company and appellants, and Placid Oil Company has never assumed the debt herein sued for.

As to the 3rd additional question raised:

■ Appellees contend that appellants are precluded from recovering by reason of their failure to plead and prove compliance with the Texas Securities Act, Art. 600a, R.C.S., and with the Real Estate Dealers License Act, Art. 6573a, R.C.S. We overrule appellees' contentions and hold that neither act applies to a suit to recover the balance of the purchase price of property. It is undisputed that Hamblen held title to the leasehold estate. The Real Estate Dealers Act does not apply to a sale where such sale is made by the owner, and the Act is limited to suits for commission or compensation for services rendered. The Securities Act does not apply to protect purchasers and therefore, if this were a suit for a commission for services rendered (which it is not) then certainly these services were rendered to Mecom, the purchaser, in procuring for him the lease, and the Securities Act does not apply.

From the foregoing it follows that the judgment of the Trial Court must be reversed in part and judgment here rendered that appellant Hamblen recover ⅓ of the $11,690.35 sued for, against the defendant Mecom, and that appellant A. D. Hawkins recover ⅓ of the $11,690.35 sued for, against defendant Mecom. Judgment of the Trial Court that appellants take nothing as to Placid Oil Company is in all things affirmed.

Reversed and rendered in part, affirmed in part.