

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00422-CV

KODIAK PRODUCTS CO., INC.                                    APPELLANT

V.

CHARLES H. DEEGEAR, JR. AND                                    APPELLEES
DEEMAXX COMPONENTS, INC.

----------

FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 236-252084-11

----------

## MEMORANDUM OPINION[1]

----------

Appellant Kodiak Products Co., Inc. filed suit against Appellees Charles H. Deegear, Jr. and Deemaxx Components, Inc., asserting claims for unfair competition, misappropriation of trade secrets and confidential information, violations of the Texas Theft Liability Act, and conversion. Deegear and

---

[1]*See* Tex. R. App. P. 47.4.

Deemaxx pled the affirmative defense of settlement and release and counterclaimed for declaratory judgment. After a series of motions for summary judgment, the trial court entered a final judgment ordering that Kodiak take nothing by its claims and awarded declaratory relief and attorney's fees to Deegear and Deemaxx. In four issues, Kodiak argues the trial court erred by (1) granting Deegear and Deemaxx's motion for traditional summary judgment on their settlement and release defense; (2) granting Deegear and Deemaxx's no-evidence motion for summary judgment on Kodiak's unfair competition claim; (3) granting Deegear and Deemaxx's motion for summary judgment on their counterclaim for declaratory relief; and (4) awarding Deegear and Deemaxx trial and appellate attorney's fees. We affirm in part and reverse and remand in part.

## I.
## Background

This appeal arises out of the second lawsuit between the parties. Kodiak manufactures, assembles, and sells disc brakes and brake components to trailer manufacturers, trailer parts distributors, trailer axle manufacturers, and trailer dealers across the country. Deegear began working at Kodiak as a part-time employee in 1992. By 2004, Deegear was Kodiak's president. He also sat on the board of directors and owned fifty percent of Kodiak's stock. As an employee and president of Kodiak, Deegear acquired knowledge of Kodiak's trade secrets and confidential and proprietary information.

2

In 2009, Deegear initiated negotiations with William Glidewell—Kodiak's founder, chief executive officer, and owner of the other fifty percent of Kodiak's stock—to purchase Glidewell's shares. According to Glidewell, Deegear made him an "unfairly low offer" for his Kodiak shares and threatened to "take Kodiak's employees and customers and force Kodiak to liquidate if [Glidewell] wouldn't accede to his demands." Glidewell claims that he then learned that Deegear had committed corporate malfeasance, including misuse of corporate funds. On August 17, 2009, Glidewell and Kodiak's board of directors had Deegear escorted from Kodiak's premises and began a formal ethics investigation into his activities as president of Kodiak. Glidewell claims Kodiak's investigation revealed that Deegear had breached his fiduciary duties to Kodiak, had failed to properly report to the board of directors, had mismanaged key matters, had improperly shared confidential information with third parties, had falsified expense reports, had used company credit cards against company policy, and had threatened to steal corporate employees, customers, and vendors to directly compete with Kodiak and force it out of business.

In September 2009, Kodiak sued Deegear for breach of fiduciary duty, breach of contract, theft, and declaratory and injunctive relief. Kodiak alleged, among other things, that Deegear had taken its trade secrets and was threatening to take its "customers and vendors and open his own business to compete with Kodiak." Kodiak sought a temporary and permanent injunction to "restrain Deegear from using or disclosing or continuing to retain Kodiak's

3

information" and to "restrain Deegear from directly competing with Kodiak for a period of at least a year."

On November 19, 2009, the parties settled the lawsuit and executed a settlement agreement with an effective date of October 5, 2009. Kodiak agreed to pay Deegear $330,000, and Deegear agreed to transfer all of his Kodiak stock to Kodiak and to resign. Kodiak and Deegear also agreed to release their claims against each other and to file a joint motion to dismiss the lawsuit with prejudice within five days of the execution of the settlement agreement. On December 9, 2009, the trial court signed an order dismissing the suit with prejudice.

In June 2010, Deegear formed Deemaxx. Deemaxx designs, manufactures, and sells disc brakes and brake components in the trailer industry and competes with Kodiak. Kodiak claims that since 2010, it has received reports from vendors, distributors, customers, and others in the industry that Deegear and Deemaxx were trying to manufacture and sell rotors, brakes, and other components in competition with Kodiak that appeared to be based upon drawings that were nearly identical to Kodiak's drawings for similar components and parts. Some of Kodiak's U.S. partners and distributors reported to Kodiak that Deegear, acting through Deemaxx, was soliciting sales of competing components and parts that appeared to be based on confidential information and designs that Deegear had and had access to while he was at Kodiak. One of Deemaxx's representatives gave one of Kodiak's customers a price sheet. Kodiak customers and vendors also received Deemaxx brochures that described

4

Deemaxx's brakes and extolled their virtues and alleged advantages over similar Kodiak products. All of Kodiak's larger customers and distributors reported receiving repetitive calls from Deegear and Deemaxx trying to solicit business away from Kodiak. Deemaxx's website contained pictures and descriptions of products similar to Kodiak's products. Kodiak believed that Deemaxx's brakes and other parts were based on engineering drawings that contained information—including verbatim instruction notes—virtually identical to information contained in Kodiak's drawings for the same parts. And at the National Association of Trailer Manufacturers annual trade show in February 2011, Deegear and Deemaxx displayed three different disc brake sets that were identical to Kodiak's brakes. Kodiak believed that these brakes were made based upon drawings and information belonging to Kodiak that Deegear obtained while employed by Kodiak and that Deegear and Deemaxx had no right to use.

On April 6, 2011, Kodiak sued Deegear and Deemaxx, asserting claims for unfair competition, misappropriation of trade secrets and confidential information, violation of the Texas Theft Liability Act, and conversion. Kodiak also sought a temporary and permanent injunction compelling Deegear and Deemaxx to return Kodiak's trade secrets or confidential information and to restrain Deegear and Deemaxx from any further acts of unfair competition against Kodiak and from using or disclosing its trade secrets or confidential information. In their answer, Deegear and Deemaxx asserted several affirmative defenses, including prior settlement and release based on the release language in the 2009 settlement

5

agreement. They also filed a counterclaim asserting breach of contract and tortious interference claims and seeking a declaratory judgment to determine the parties' rights under the settlement agreement.

Deegear and Deemaxx filed a motion for summary judgment seeking a traditional summary judgment on their prior settlement and release defense and a no-evidence summary judgment on Kodiak's unfair competition claim. The trial court granted Deegear and Deemaxx's summary judgment motion on their affirmative defense with respect to Kodiak's claims for misappropriation of trade secrets and confidential information, violations of the Texas Theft Liability Act, and conversion. Deegear and Deemaxx supplemented their no-evidence motion for summary judgment. The trial court granted the supplemental motion, thereby disposing of all of Kodiak's claims.

Deegear and Deemaxx filed a motion for traditional summary judgment on their declaratory judgment counterclaim. The trial court granted the motion and declared that the settlement agreement released Deegear and Deemaxx from all claims asserted by Kodiak in the 2009 lawsuit and any claims or causes of action that could be brought by Kodiak on or after October 5, 2009, whether or not such claims or causes of action were connected in any way to Deegear's relationship with Kodiak. The trial court also granted Deegear and Deemaxx's claims for attorney's fees pursuant to the Declaratory Judgment Act and found that they were entitled to recover attorney's fees "in an amount to be determined."

6

By agreement of the parties, the issue of attorney's fees was submitted to the trial court by motions and affidavits. The trial court granted Deegear and Deemaxx's request for attorney's fees and entered a final judgment ordering that Kodiak take nothing on its claims, declaring the parties' rights under the settlement agreement, and awarding Deegear and Deemaxx $215,559.62 in trial attorney's fees and conditional appellate attorney's fees of $60,000 if Kodiak unsuccessfully appealed the judgment to the court of appeals, $15,000 if Kodiak filed a petition for review with the supreme court, $25,000 if the supreme court ordered full briefing on the petition for review, and $20,000 if the supreme court granted the petition for review. Kodiak appealed.

## II.
## Standards of Review

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710

7

S.W.2d 59, 60 (Tex. 1986). A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c). To accomplish this, the defendant-movant must present summary judgment evidence that conclusively establishes each element of the affirmative defense. *See Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008).

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* Tex. R. Civ. P. 166a(i) & cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton*, 249 S.W.3d at 426 (citing *City of Keller v. Wilson*, 168

8

S.W.3d 802, 822 (Tex. 2005)). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus.*, 286 S.W.3d at 310 (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied*, 541 U.S. 1030 (2004).

**III.
Analysis**

**A.      Summary Judgment on Deegear and Deemaxx's Affirmative Defense**

In its first issue, Kodiak complains the trial court erred by granting Deegear and Deemaxx's motion for summary judgment on their affirmative defense of settlement and release. Specifically, Kodiak argues that summary judgment was improper because (1) the settlement agreement specifically states that the parties were only releasing claims that arose "prior to, or at the time of, the effective date" of the settlement agreement and Kodiak's claims in this lawsuit arose after the effective date and (2) Deemaxx was not a party to the settlement agreement and did not exist when the settlement agreement was executed.

9

### 1. Applicable Law

A release is an agreement or contract in which one party agrees that a legal right or obligation owed by the other party is surrendered. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). It is subject to the normal rules of contract construction, including the rules of ambiguity. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ins. Co. of N. Am.*, 955 S.W.2d 120, 127 (Tex. App.—Houston [14th Dist.] 1997), *aff'd*, 20 S.W.3d 692 (Tex. 2000). A release extinguishes a claim or cause of action and is an absolute bar to any right of action on the released matter. *Dresser Indus.*, 853 S.W.2d at 508.

To release a claim effectively, the releasing instrument must "mention" the claim to be released. *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991); *see Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692, 698 (Tex. 2000). Claims not clearly within the subject matter of the release are not discharged, even if those claims exist when the release is executed. *Keck*, 20 S.W.3d at 698. It is not necessary, however, for the parties to anticipate and explicitly identify every potential cause of action relating to the subject matter of the release. *Id.* Although releases include claims existing at the time of execution, they may also include unknown claims and damages that develop in the future. *See id.*

In construing a release, as with other contracts, the primary effort is to ascertain and give effect to the intention of the parties to the release, considering the instrument as a whole. *Stafford v. Allstate Life Ins. Co.*, 175 S.W.3d 537, 541

(Tex. App.—Texarkana 2005, no pet.) (reasoning that a contract must be read as a whole rather than isolating a certain phrase, sentence, or section of the agreement). The contract's language is to be given its plain grammatical meaning unless doing so would defeat the parties' intent. *Id.* In determining intent, we must look to the contract, not what the parties allegedly meant. *Union Pac. R.R. v. Novus Int'l, Inc.,* 113 S.W.3d 418, 421 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). An unambiguous contract will be enforced as written. *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008).

### 2. Application

In their motion for summary judgment, Deegear and Deemaxx contended that in the settlement agreement, Kodiak released them from the claims asserted in the 2011 lawsuit that arose from or related to the same factual bases, claims, and causes of action in the 2009 lawsuit. In the 2009 lawsuit, Kodiak alleged that as an employee and officer of Kodiak, Deegear had acquired knowledge of Kodiak's trade secrets and confidential and proprietary information, including, but not limited to (1) its product development plans; (2) the limitations of its products; (3) its engineering designs and design concepts; (4) the technical data and specifications of its products; (5) its product costs and pricing information; (6) its financial information; (7) the compensation levels it could and did offer its employees and outside sales agents; (8) its business development plans; (9) its marketing plans and strategy; and (10) information on its customer prospects and on customer contacts. Kodiak alleged, among other things, that Deegear had

11

taken Kodiak's trade secrets and was threatening to take Kodiak's "customers and vendors and open his own business to compete with Kodiak." Kodiak sought a temporary and permanent injunction to "restrain Deegear from using or disclosing or continuing to retain Kodiak's information" and to "restrain Deegear from directly competing with Kodiak for a period of at least a year."

The settlement agreement provided in relevant part as follows:

> This SETTLEMENT AGREEMENT (the "Agreement") is made effective as of October 5, 2009, (the "Effective Date") by and between Kodiak Products Co., Inc. ("Kodiak")[,] William E. Glidewell ("Glidewell"), Sylvia Hartless ("Hartless")[,][2] and Charles H. Deegear, Jr. ("Deegear"), and is entered into with the full consent and approval of Deegear's spouse.
>
> . . . .
>
> WHEREAS, the parties desire to resolve and settle these disputes and finally and forever resolve all claims of any kind and character relating to or arising from the events and allegations set forth in the Lawsuit . . . .
>
> . . . .
>
> 2.    Covenants by Kodiak:  In consideration of these recitals and the promises and agreements set forth in this Agreement, on which the other parties hereto rely in agreeing to their covenants, Kodiak agrees to perform the following:
>
> > . . . .
> >
> > 2.4    Release of Deegear:  Kodiak, for itself and anyone claiming through it or on its behalf, IRREVOCABLY    AND    UNCONDITIONALLY

---

[2]Hartless was a third-party defendant in the 2009 lawsuit.  The record does not reflect the claims against her, but based upon the settlement agreement, it appears that she was aligned with Kodiak and Glidewell.

12

> RELEASES, ACQUITS AND FOREVER DISCHARGES Deegear, and anyone or any entity acting through or on his behalf, including without limitation any past, present, and future agents, employees, shareholders, directors, insurers, officers, heirs, administrators, executors, spouses, and attorneys, from any and all claims or causes of action whatsoever, whether known or unknown, whether accrued or unaccrued, and whether connected in any way with Deegear's relationships with Kodiak, Glidewell, Hartless, or not, including, but not limited to, any claims or causes of action arising under contract, any law, common or statutory, that provides any sort of right, benefit, or cause of action that can be the subject of a release under applicable law, which may have arisen, or which may arise, prior to, or at the time of, the Effective Date of this Agreement.

In the 2011 lawsuit, Kodiak alleged that "Deegear had and ha[s] access to Kodiak's trade secrets and confidential information only because he was employed by Kodiak" and that "Deegear, following his resignation [from Kodiak], retained copies of documents and other things containing Kodiak's [c]onfidential [i]nformation, including product specifications and designs, customer lists, vendors lists, vendor capabilities, vendor cost and pricing information, customer and product pricing information, customer purchase requirements, and marketing strategies." Kodiak further alleged that Deegear and Deemaxx had misappropriated Kodiak's trade secrets and confidential information. Kodiak also asserted conversion and Texas Theft Liability Act claims against Deegear. Kodiak sought temporary and permanent injunctive relief enjoining Deegear from any further use or disclosure of Kodiak's trade secrets or confidential information and compelling Deegear and Deemaxx to return any and all documents or other

things that contained Kodiak's trade secrets or confidential information. Even though the claims in the 2009 lawsuit differ from those asserted in the 2011 lawsuit, both lawsuits arise from and relate to Deegear's employment with Kodiak and the information he allegedly gained during his tenure at Kodiak.

Kodiak argues that because the settlement agreement's release provisions only released Deegear from claims or causes of action arising prior to October 5, 2009, its claims in the 2011 lawsuit were not barred by the release. The release provision in the settlement agreement is divided into two parts. The first part reads as follows:

> 2.4 Release of Deegear: Kodiak, for itself and anyone claiming through it or on its behalf, IRREVOCABLY AND UNCONDITIONALLY RELEASES, ACQUITS AND FOREVER DISCHARGES Deegear, and anyone or any entity acting through or on his behalf, including without limitation any past, present, and future agents, employees, shareholders, directors, insurers, officers, heirs, administrators, executors, spouses, and attorneys, from any and all claims or causes of action whatsoever, whether known or unknown, whether accrued or unaccrued, and whether connected in any way with Deegear's relationships with Kodiak, Glidewell, Hartless, or not,

And the second part states:

> including, but not limited to, any claims or causes of action arising under contract, any law, common or statutory, that provides any sort of right, benefit, or cause of action that can be the subject of a release under applicable law, which may have arisen, or which may arise, prior to, or at the time of, the Effective Date of this Agreement. [Emphasis added.]

14

Kodiak contends the underlined clause at the end of part two applies to all of paragraph 2.4, and therefore, the settlement agreement does not release claims arising after the settlement agreement's effective date.

Part one releases Deegear "from any and all claims or causes of action whatsoever, whether known or unknown, whether accrued or unaccrued, and whether connected in any way with Deegear's relationships with Kodiak, Glidewell, Hartless, or not." This broad language releases Deegear from all possible claims, including future claims. Kodiak contents that this broad language is limited by part two. Part two, however, is illustrative, stating that the released claims include, but are not limited to, "any claims or causes of action arising under contract, any law, common or statutory, that provides any sort of right, benefit, or cause of action that can be the subject of a release under applicable law."

Under the "last antecedent" doctrine, the final clause of part two does not limit the broad language of part one of paragraph 2.4. The "last antecedent" doctrine is "a canon of contract and statutory construction" by which "'relative and qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding, and are not to be construed as extending to or including others more remote.'" *Certain Underwriters at Lloyd's of London Subscribing to Policy Number: FINFR0901509 v. Cardtronics, Inc.*, 438 S.W.3d 770, 782 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (op. on reh'g) (quoting *Montanye v. Transamerica Ins. Co.*, 638 S.W.2d 518, 521 (Tex. App.—Houston [1st Dist.]

15

1982, no writ)). "[M]odifiers are intended to refer to the words closest to them in the sentence." *Samano v. Sun Oil Co.*, 621 S.W.2d 580, 581–82 (Tex. 1981). Thus, in this case, the final clause refers back to the illustrative language in part two. It does not limit the broad release language in part one.

Next, Kodiak contends that because Deemaxx was not a party to the settlement agreement and did not exist when the settlement agreement was executed, Kodiak did not release its claims against Deemaxx. Paragraph 2.4 applies not only to Deegear, but to "anyone or any entity acting through or on his behalf, including without limitation any past, present, and future agents, employees, shareholders, directors, insurers, officers, heirs, administrators, executors, spouses, and attorneys." This includes Deemaxx.

We conclude that paragraph 2.4 of the settlement agreement releases all of Kodiak's claims against Deegear and Deemaxx, including those arising after the effective date of the settlement agreement. Therefore, Deegear and Deemaxx conclusively proved their affirmative defense as a matter of law, and the trial court did not err by granting summary judgment with respect to Kodiak's claims for misappropriation of trade secrets and confidential information, violations of the Texas Theft Liability Act, and conversion. Accordingly, we overrule Kodiak's first issue.

16

**B.** **No-Evidence Summary Judgment on Kodiak's Unfair Competition Claim**

By its second issue, Kodiak argues the trial court erred by granting Deegear and Deemaxx's supplemental no-evidence motion for summary judgment on Kodiak's unfair competition claim. In support of its unfair competition claim, Kodiak alleged in paragraphs 42 and 43 of its first amended petition as follows:

> 42. Likewise, Deegear's and Deemaxx's false advertising constitutes unfair competition. Deegear and Deemaxx make false statements (on the internet and in marketing materials provided to prospective customers and distributors) that: (a) their products are the subject of pending patent applications; (b) their products are unique compared to others in the industry, including Kodiak's; and (c) their products out-perform others in the industry, including Kodiak's.

> 43. Deegear and Deemaxx have made these statements on the internet and in marketing materials provided to prospective customers and distributors with the intent to deceive those prospective customers and distributors (as well as the public, generally) concerning the nature of their products, the patent protection of their products, and their products' relative performance. These statements are also made with an intent that prospective customers and distributors (as well as the public, generally) rely on those statements when making decisions to purchase Deemaxx's products or to purchase competitors' products (including Kodiak's).

In their supplemental no-evidence motion for summary judgment, Deegear and Deemaxx characterized Kodiak's claim as a false advertising claim under the Lanham Act and argued that there was no evidence to support the claim. *See* 15 U.S.C.A. § 1125(a)(1)(B) (West 2009) ("Any person who . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or

geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."). Kodiak specially excepted to Deegear and Deemaxx's motion, arguing that the motion's grounds were unclear and ambiguous because Deegear and Deemaxx challenged a cause of action that Kodiak had not pled.

Kodiak argues that the trial court erred in granting Deegear and Deemaxx's no-evidence motion for summary judgment for three reasons. First, the trial court erred in overruling Kodiak's special exceptions.[3] Second, Deegear and Deemaxx's motion, which asserted there was no evidence of a false advertising claim under the Lanham Act, erroneously challenged a claim not asserted by Kodiak. Third, notwithstanding the label placed on Kodiak's allegations in its first amended petition, it presented sufficient evidence to raise genuine issues of material fact that precluded the granting of summary judgment. We address each of these arguments in turn.

---

[3]The record does not show that the trial court ruled on Kodiak's special exceptions, but by granting Deegear and Deemaxx's no-evidence motion, it implicitly overruled Kodiak's special exceptions. *See Fieldteck Avionics & Instruments, Inc. v. Component Control.Com, Inc.*, 262 S.W.3d 813, 824 n.3 (Tex App.—Fort Worth 2008, no pet.) ("[A] trial court implicitly overrules special exceptions when it grants summary judgment on the motion to which the special exceptions pertain.").

18

### 1. Kodiak's special exceptions

Kodiak argued in its special exceptions that Deegear and Deemaxx's supplemental no-evidence motion was unclear and ambiguous because (1) it was premised on the erroneous assumption that Kodiak asserted a false advertising claim under the Lanham Act and (2) Deegear and Deemaxx did not address the actual grounds upon which Kodiak's unfair competition claim was based—Deegear and Deemaxx's misappropriation of Kodiak's designs for disc brake and brake components and their false statements about their products on the Internet and in marketing materials. Kodiak asserts that the trial court should have sustained Kodiak's special exceptions and required Deegear and Deemaxx to redraft their no-evidence motion.

In summary judgment proceedings, special exceptions are intended to ensure that the parties and the court are focused on the same grounds. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342–43 (Tex. 1993). The trial court has broad discretion in ruling on special exceptions, and its ruling will not be disturbed absent an abuse of discretion. *Alejandro v. Bell*, 84 S.W.3d 383, 389 (Tex. App.—Corpus Christi 2002, no pet.). Even though Kodiak did not agree with the summary-judgment grounds alleged in Deegear and Deemaxx's motion, the grounds were clear from the motion. Thus, we conclude that the trial court did not abuse its discretion by implicitly overruling Kodiak's special exceptions.

## 2. Deegear and Deemaxx's supplemental no-evidence motion for summary judgment

Kodiak argues alternatively that the trial court erred in granting Deegear and Deemaxx's supplemental no-evidence motion for summary judgment because the motion was fatally defective in that it raised a no-evidence ground on the presumption that Kodiak had pled a false advertising cause of action under the Lanham Act. In the further alternative, Kodiak argues that if we conclude that it alleged a false advertising claim under the Lanham Act or that the elements of a Lanham Act claim are common to Kodiak's unfair competition claim, the trial court erred in granting the motion because Kodiak presented sufficient evidence to raise a genuine issue of material fact on the elements challenged by Deegear and Deemaxx.

Kodiak contends that its unfair competition claim as pled in paragraphs 42 and 43 arose under the Texas common law, not the Lanham Act. "The law of unfair competition is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." *U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 217 (Tex. App.—Waco 1993, writ denied) (quoting *Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 14 (5th Cir. 1974)). Unfair competition includes a number of types of objectionable trade practices, including trademark infringement, dilution of good will, misappropriation of business value, palming off, passing off, and theft of trade

20

secrets. *Healthpoint, Ltd. v. River's Edge Pharms., LLC*, No. SA-03-CV-984-RF, 2005 WL 356839, at *3 (W.D. Tex. Feb. 14, 2005); *U.S. Sporting Prods.*, 865 S.W.2d at 217. Unfair competition requires that the plaintiff show an illegal act by the defendant that interfered with the plaintiff's ability to conduct its business. *Schoellkopf v. Pledger*, 778 S.W.2d 897, 904–05 (Tex. App.—Dallas 1989, writ denied). The illegal act need not necessarily violate criminal law, but it must at least be an independent tort. *Id.* ("Without some finding of an independent substantive tort or other illegal conduct, we hold that liability cannot be premised on the tort of 'unfair competition.'").

In support of its unfair competition claim, Kodiak alleged that Deegear and Deemaxx engaged in false advertising. As pointed out by Deegear and Deemaxx in their summary judgment reply and on appeal, Texas does not recognize a common law false advertising claim. *See VendEver LLC v. Intermatic Mfg. Ltd.*, No. 3:11-CV-201-B, 2011 WL 4346324, at *4, n.4 (N.D. Tex. Sept. 16, 2011) ("It is unclear whether there is in fact a common law cause of action for false advertising under Texas law."); *see also* Charles M. Hosch, *Business Torts*, 65 SMU L. Rev. 315, 328 (2012) ("The [VendEver] court's point was well taken because there really is no such cause of action as 'common law false advertising' in Texas or in many other states."). Additionally, false advertising claims are different from unfair competition claims. "[I]n the former case, the defendant makes no secret of the origin of the goods in himself, but merely misrepresents certain qualities or characteristics that his goods may or

21

may not have; in the latter case, the defendant misrepresents his goods to be those of another." *Chevron Chem. Co. v. Voluntary Purchasing Grps., Inc.*, 659 F.2d 695, 701 (5th Cir. 1981).

Thus, we construe Kodiak's unfair competition claim as a claim for false advertising in violation of the Lanham Act. *See Healthpoint, Ltd. v. Ethex Corp.*, No. SA-01-CA-646-OG, 2004 WL 2359420, at *9 (W.D. Tex. July 14, 2004) ("Healthpoint's allegations in support of its claim of common law unfair competition are those also alleged for false advertising in violation of the Lanham Act. Accordingly, the claim for common law unfair competition will be analyzed under the elements of the claim of false advertising in violation of the Lanham Act."); *see also Healthpoint, Ltd. v. Allen Pharm., LLC*, No. SA-07-CA-0526-XR, 2008 WL 728333, at *4 (W.D. Tex. Mar. 18, 2008) (finding common law unfair competition claim in false advertising case dependent on Lanham Act false advertising claim and analyzing such claim under the elements of the Lanham Act). To establish liability for false advertising under the Lanham Act, the plaintiff must show that (1) the defendant made a false statement of fact about its product in a commercial advertisement; (2) the statement actually deceived or has a tendency to deceive a substantial segment of its audience; (3) the deception is likely to influence a purchasing decision; (4) the defendant caused the false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result. *Astoria Indus. of Iowa, Inc. v. SNF, Inc.*, 223 S.W.3d 616, 629–30 (Tex. App.—Fort Worth 2007, pet. denied) (op. on reh'g).

22

In their supplemental no-evidence motion for summary judgment, Deegear and Deemaxx alleged there was no evidence to support any of the elements of Kodiak's false advertising claim. Thus, Kodiak was required to bring forward evidence raising a genuine issue of material fact on each element. *See* Tex. R. Civ. P. 166a(i). Kodiak, however, failed to bring forward any evidence to raise a genuine issue of fact that Deegear and Deemaxx's alleged deception was likely to influence a purchasing decision.

Additionally, Kodiak failed to present more than a scintilla of probative evidence that it was or is likely to be injured as a result of Deegear and Deemaxx's alleged false statements. Kodiak attached to its response an affidavit from Christopher Martinez, its damages expert. Martinez stated that Kodiak's annual sales during its fiscal years 2006 through 2010 trended in a manner similar to personal expenditures for durable goods, but after Deemaxx entered the market in March 2011, Kodiak's sales during fiscal year 2011 fell, even though personal expenditures for durable goods continued to rise. Martinez further stated that Kodiak's sales fell in fiscal year 2012 and trended downward through August 2012. Based on the assumption that Kodiak's sales would have continued to trend in a manner similar to personal expenditures for durable goods but for Deegear and Deemaxx's acts, Martinez calculated that Kodiak would have realized additional revenues of $1,956,326 from March 1, 2011, though August 31, 2012, and, based upon these lost revenues, calculated that Kodiak suffered $524,524 in lost profits. There was no evidence, however, that

Deemaxx's entry into the market caused the drop in Kodiak's sales. In fact, Martinez expressly stated that "[f]or the purpose of assessing the extent of potential damages, I have assumed that the observed decline in Kodiak's sales beginning in March 2011 is attributable to the alleged acts of [Deegear and Deemaxx]."

Kodiak argues that Martinez's assumption is supported by Glidewell's affidavit testimony and that together, their affidavit testimony raises genuine issues of material fact that Deegear and Deemaxx caused or were likely to cause Kodiak harm. Glidewell testified that Deegear and Deemaxx were attempting to solicit business away from Kodiak; were trying to manufacture and sell rotors, brakes, and other components to compete with Kodiak's products; had created and distributed marketing materials to Kodiak's customers and vendors promoting Deemaxx's brakes over Kodiak's brakes; and were targeting Kodiak's customers, distributors, and vendors. This testimony, however, is insufficient to support Martinez's assumption that the decline in Kodiak's sales is attributable to Deegear's and Deemaxx's acts. Nor is it sufficient on its own to raise a genuine issue of material fact that Kodiak was or is likely to be injured as a result of Deegear and Deemaxx's alleged false advertising. Thus, the trial court did not err by granting Deegear and Deemaxx's supplemental no-evidence motion for summary judgment on Kodiak's unfair competition claim. We overrule Kodiak's second issue.

24

**C. Summary Judgment on Deegear and Deemaxx's Counterclaim for Declaratory Judgment**

In its third issue, Kodiak argues the trial court erred in granting Deegear and Deemaxx's motion for summary judgment on their counterclaim for declaratory relief because the counterclaim was improperly used to recover attorney's fees on disputes already pending before the trial court. Kodiak argues in its fourth issue that because declaratory relief was improper as matter of law, the trial court erred in awarding attorney's fees to Deegear and Deemaxx under the Declaratory Judgment Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2015) ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."). Kodiak also challenges the attorney's fees on the ground that Deegear and Deemaxx failed to segregate their fees.

**1. Applicable Law**

A counterclaim for declaratory judgment is improper if it is nothing more than a mere denial of the plaintiff's claims and the counterclaim fails to have greater ramifications than the original suit. *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 842 (Tex. 1990) (orig. proceeding). To have "greater ramifications" than the original suit, the counterclaim should seek some sort of affirmative relief. *HECI Exploration Co. v. Clajon Gas Co.*, 843 S.W.2d 622, 638–39 (Tex. App.— Austin 1992, writ denied); *see also* Tex. R. Civ. P. 96; *Warrantech Corp. v. Steadfast Ins. Co.*, 210 S.W.3d 760, 770 (Tex. App.—Fort Worth 2006, pet.

denied) ("The Declaratory Judgment Act is not available, however, to settle disputes already pending before a court."). "To qualify as a claim for affirmative relief, a defensive pleading must allege that the defendant has a cause of action, independent of the plaintiff's claim, on which he could recover benefits, compensation or relief, even though the plaintiff may abandon his cause of action or fail to establish it." *Gen. Land Office of Tex. v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 570 (Tex. 1990) (quoting *Weaver v. Jock*, 717 S.W.2d 654, 657 (Tex. App.—Waco 1986, writ ref'd n.r.e.)).

Even though the Declaratory Judgment Act permits a trial court to "award costs and reasonable and necessary attorney's fees as are equitable and just," Tex. Civ. Prac. & Rem. Code Ann. § 37.009, a party bringing a counterclaim under the act may only recover its attorney's fees "if the counterclaim is more than a mere denial of the plaintiff's cause of action." *HECI Exploration Co.*, 843 S.W.2d at 638. The award or denial of attorney's fees is within the trial court's sound discretion. *Warrantech Corp.*, 210 S.W.3d at 769–70 (citing *Oake v. Collin Cnty.*, 692 S.W.2d 454, 455 (Tex. 1985); *Redwine v. AAA Life Ins. Co.*, 852 S.W.2d 10, 17 (Tex. App.—Dallas 1993, no writ)). However, "a counterclaim brought under the Declaratory Judgment Act presenting no new controversies but brought solely to pave an avenue to attorney's fees is improper." *Id.* at 770.

### 2. Application

In their motion for summary judgment on their declaratory judgment counterclaim, Deegear and Deemaxx asked the trial court to "declare the rights

26

and duties of the parties as they relate to the contractual release between plaintiff and defendants" and argued they were entitled to declaratory relief as to "the construction and validity of the release in the [s]ettlement [a]greement not only as it applies to Kodiak's current claims by [sic] potential future claims by Kodiak." The trial court granted Deegear and Deemaxx's motion and entered a declaration that Kodiak, in the settlement agreement,

> fully released Deegear from any claims or causes of action (including those asserted herein) that could be brought by Kodiak against Deegear on or after October 5, 2009, whether or not such claims or causes of action are connected in any way to Deegear's relationships with Kodiak [and]

> . . . fully released anyone or any entity acting through or on Deegear's behalf from any claims or causes of action (including those asserted herein) that could be brought by Kodiak against such person or entity on or after October 5, 2009, whether or not such claims or causes of action are connected in any way to Deegear's relationships with Kodiak, and Kodiak has thereby fully release[d] Deemaxx from such claims.

Deegear and Deemaxx argue that the declaratory relief requested had greater ramifications than Kodiak's lawsuit and sought affirmative relief because the trial court declared that paragraph 2.4 of the settlement agreement released (1) claims that did not arise from Deegear's relationships with Kodiak, (2) claims against nonparties acting through or on Deegear's behalf, and (3) future claims that may be asserted after the conclusion of this litigation. But their request for declaratory relief was nothing more than a restatement of their affirmative defense and had no greater ramifications than Kodiak's claims. As discussed above, Deegear and Deemaxx sought summary judgment on their affirmative

27

defense of settlement and release based upon paragraph 2.4 of the settlement agreement, which stated that Kodiak released Deegear from claims "whether connected in any way with Deegear's relationships with Kodiak . . . or not" and "anyone or any entity acting through or on his behalf." They also argued that Kodiak released them from future claims. In substance, Deegear and Deemaxx's requested declarations are identical to the basis for their affirmative defense. *See HECI Exploration*, 843 S.W.2d at 639. The declaratory judgment counterclaim does not allege a cause of action independent from Kodiak's claim on which Deegear and Deemaxx could recover relief if Kodiak abandoned its cause of action. *See BHP Petroleum*, 800 S.W.2d at 842; *HECI Exploration*, 843 S.W.2d at 639. Deegear and Deemaxx asked for no greater relief in their declaratory judgment counterclaim than they asked for without the counterclaim. *See HECI Exploration*, 843 S.W.2d at 639. Accordingly, we conclude that as a matter of law, the trial court erred in granting summary judgment on Deegear and Deemaxx's declaratory judgment counterclaim and abused its discretion in awarding them attorney's fees under the Declaratory Judgment Act. We sustain Kodiak's third and fourth issues.

## IV.
## Conclusion

We overrule Kodiak's first and second issues. Having sustained Kodiak's third and fourth issues, we reverse the trial court's judgment as to Deegear and Deemaxx's declaratory judgment counterclaim and the award of attorney's fees,

28

and we remand this case to the trial court for further proceedings consistent with this opinion.[4]  *See* Tex. R. App. P. 43.2(d).  We affirm the remainder of the trial court's judgment.  *See* Tex. R. App. P. 43.2(a).


/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

DELIVERED:  June 4, 2015

---

[4]When, as here, only one party moves for summary judgment and an appellate court reverses that summary judgment, the case must be remanded to the trial court.  *See Herald-Post Publ'g Co. v. Hill*, 891 S.W.2d 638, 640 (Tex. 1994); *see also CRA, Inc. v. Bullock*, 615 S.W.2d 175, 176 (Tex. 1981) ("A summary judgment was granted and the adverse party did not also seek a summary judgment.   In this situation where upon appeal it is determined that the summary judgment was improperly granted, the appeal does not afford a basis for rendering a judgment for the non-moving party.").