Rebecca **STAFFORD**, as next friend of Joshua L. Stafford, a Minor, and on behalf of others similarly situated, Appellants,

v.

**ALLSTATE LIFE INSURANCE COMPANY, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Company, Allstate County Mutual Insurance Company, Allstate Lloyds, and Allstate Settlement Corporation, Appellees.**

No. 06–05–00007–CV.

Court of Appeals of Texas, Texarkana.

Submitted Sept. 12, 2005.

Decided Oct. 18, 2005.

538

Matthew R. Pearson, Gravely & Pearson, LLP, San Antonio, for appellants.

D. Allan Jones, Orgain, Bell & Tucker, LLP, Beaumont, for appellees.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

A simple automobile accident has resulted in a class-action lawsuit challenging settlement practices of Allstate Insurance

Company and several of its affiliated companies.[1]

In 1997, Melvin Block allegedly caused an automobile accident which injured Joshua Stafford. Stafford, through his mother, Rebecca Stafford sued and then agreed to a settlement with Block and his insurer, Allstate Insurance Company. As part of the settlement, Stafford signed a document releasing Block, Allstate, and Allstate's "affiliates" from all claims arising out of the accident. Four years after signing the release, Stafford sued Allstate and several of its affiliates as class representative of a purported class of persons who had been involved in structured settlements with one or more of the Allstate entities. The trial court granted summary judgment in favor of Allstate and its affiliates based on the affirmative defense of release.

We affirm the summary judgment favoring appellees Allstate Insurance Company, Allstate Life Insurance Company, and Allstate Settlement Corporation—the "Transaction Defendants"—and reverse the summary judgment as to appellees Allstate Indemnity Company, Allstate Property and Casualty Company, Allstate County Mutual Insurance Company, and Allstate Texas Lloyds—the "Nontransaction Defendants"—because (1) the release covers the settlement-related claims asserted in the present lawsuit, (2) the release releases the Transaction Defendants, and (3) Stafford has alleged sufficient facts to support personal standing as to the Nontransaction Defendants.

*(1) The Release Covers the Settlement-related Claims Asserted in the Present Lawsuit*

Summary judgment is properly granted only when the movant establishes that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991); *Mo. Pac. R.R. v. Lely Dev. Corp.*, 86 S.W.3d 787, 790 (Tex.App.-Austin 2002, pet. dism'd). Because the propriety of a summary judgment is a question of law, we review the trial court's decision de novo. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994). The standards for review of a traditional summary judgment are well established: (1) the movant must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, the court must take evidence favorable to the nonmovant as true; and (3) the court must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in the nonmovant's favor. TEX.R. CIV. P. 166a(c); *Pustejovsky v. Rapid-Am. Corp.*, 35 S.W.3d 643, 645–46 (Tex. 2000); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

A defendant seeking summary judgment must, as a matter of law, negate at least one element of each of the plaintiff's theories of recovery or plead and prove each element of an affirmative defense. *Mo. Pac. R.R.*, 86 S.W.3d at 790. Not until the defendant establishes its right to summary judgment does the plaintiff bear the burden of raising a fact issue. *Id.* If a trial court's order granting summary judgment does not specify the basis for the court's ruling, the summary judgment will be affirmed if any of the theories advanced by the movant are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

1. Allstate Life Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Company, Allstate County Mutual Company, Allstate Lloyds, and Allstate Settlement Corporation.

The settlement agreement provided that Stafford would receive a set of structured payments over a number of years. In return, Stafford released Block and Allstate from any future claims. To pay for the settlement, Allstate was given the right to purchase an annuity from its affiliate, Allstate Life Insurance Company.

■ The crux of the present lawsuit lies on the allegation that Allstate engaged in unlawful behavior by forcing Stafford to accept an annuity from one of Allstate's affiliates rather than allowing her to choose where to purchase an annuity to fund her settlement payments. Stafford also alleges that Allstate charged undisclosed fees related to the purchasing of the annuity. Stafford's suit against the Allstate companies alleges violations of the Texas Free Enterprise and Antitrust Act of 1983, the Texas Deceptive Trade Practices Act, and the Texas Insurance Code, as well as conspiracy, unjust enrichment, and conversion. Stafford contends these claims do not fall within the subject matter of the settlement agreement release. We disagree.

■ A release is an agreement or contract in which one party agrees that a duty or obligation owed by the other party is discharged immediately on the occurrence of a condition. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex.1993); *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex.1990); *Nat'l Union Fire Ins. Co. v. Ins. Co. of N. Am.*, 955 S.W.2d 120, 127 (Tex. App.-Houston [14th Dist.] 1997), *aff'd, Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co.*, 20 S.W.3d 692 (Tex.2000). A release extinguishes a claim or cause of action and bars recovery on the released matter. *Dresser Indus.*, 853 S.W.2d at 508.

■ To release a claim effectively, the releasing instrument must "mention" the claim to be released. *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex.1991). Any claims not "clearly within the subject matter" of the release are not discharged, even if those claims exist when the release is executed. *Id.* It is not necessary, however, for the parties to anticipate and explicitly identify every potential cause of action relating to the subject matter of the release. *Keck, Mahin & Cate,* 20 S.W.3d at 698. Although releases generally contemplate claims existing at the time of execution, a valid release may also encompass unknown claims and damages that develop in the future. *Id.*

■ Like any other agreement, a release is subject to the rules of construction governing contracts, including the tenet that courts will not rewrite agreements to insert provisions parties could have included or to imply restraints for which they have not bargained. *Tenneco, Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 646 (Tex. 1996); *Williams,* 789 S.W.2d at 264. When construing a contract, courts must give effect to the true intentions of the parties as expressed in the written instrument. *Lenape Res. Corp. v. Tenn. Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996). The contract must be read as a whole rather than by isolating a certain phrase, sentence, or section of the agreement. *State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 433 (Tex.1995). The language in a contract is to be given its plain grammatical meaning unless doing so would defeat the parties' intent. *DeWitt County Elec. Coop., Inc. v. Parks,* 1 S.W.3d 96, 101 (Tex.1999).

Stafford argues the release is limited to personal injury claims arising out of the October 16, 1997, automobile accident. In support of this, Stafford points to language in the release that states it is limited to claims which accrue, "on account of, or in

any way growing out of, or which are the subject of, the Complaint."

By its language, the release applies to, "any and all past, present or future claims, ... whether based on a tort, contract or other theory of recovery, ... which may hereafter accrue or otherwise be acquired on account of, or in any way growing out of, or which are the subject of the Complaint."[2] The release is not limited to particular types of claims that resulted from the accident. Nor is it limited solely to claims that existed at the time the release was executed. The release covers all claims, based on any theory of recovery, accruing at any time in the past or future, that grow out of the accident. The release shows no intent to be limited in the manner which Stafford suggests. Absent any language of limitation, we cannot supply such a narrow interpretation.[3]

The claims in Stafford's present lawsuit are based on actions taken by Allstate during the settlement negotiations and actions taken as a result of the settlement.

The settlement negotiations and the settlement itself were a direct result of the automobile accident, i.e., they would not have occurred but for the accident. Therefore, Stafford's claims based on the settlement and settlement negotiations grew out of the accident. In fact, Stafford's own petition states, "Specifically, the claims arise out of the conduct in the underlying lawsuit filed in Jefferson County, Texas." The release bars any claims that grew out of the accident. Hence, the release contained in the settlement agreement bars Stafford's claims against all parties that were released.

### (2) The Release Covers the Transaction Defendants

██ Though Stafford contends the release is applicable only to Allstate Insurance Company, we conclude the release is applicable to Allstate Insurance Company, Allstate Settlement Corporation, and Allstate Life Insurance Company—the Transaction Defendants.

---

**2.** *See* Settlement Agreement and Release, Section 1, Release and Discharge.

**3.** *See Keck, Mahin & Cate,* 20 S.W.3d at 698 (holding broad release of claims attributable to professional services extended to malpractice claims even though recitals primarily addressed unpaid fees); *Mem'l Med. Ctr. of E. Tex. v. Keszler,* 943 S.W.2d 433, 434–35 (Tex. 1997) (release, which stated that parties agreed to release all claims related to corrective action by Memorial against Keszler "and any other matter relating to [Keszler's] relationship with [Memorial]" was not limited to claims regarding corrective action, but released all claims relating to Keszler's relationship with Memorial, including ethylene dioxide exposure claim); *Sanders v. Blockbuster, Inc.,* 127 S.W.3d 382, 385–87 (Tex.App.-Beaumont 2004, pet. denied) (release defining released claims as "any and all claims or causes of action of any nature whatsoever" included all claims by class attacking Blockbuster's extended viewing fee policies and was not limited to claims arising during specific time period, even though release defined class as those who paid fees between January 1, 1992 and April 1, 2001); *Vera v. North Star Dodge Sales, Inc.,* 989 S.W.2d 13, 18 (Tex.App.-San Antonio 1998, no pet.) (release, which operated to "release[ ] North Star Dodge from any and all liability regarding the purchase of a 1993 Mazda," was not limited to claims concerning purchase of vehicle, but also included unlawful debt collection, conversion, and wrongful repossession claims because terms of purchase were not satisfied); *Anheuser–Busch Cos. v. Summit Coffee Co.,* 858 S.W.2d 928, 932–34 (Tex.App.-Dallas 1993, writ denied), *vacated on other grounds,* 514 U.S. 1001, 115 S.Ct. 1309, 131 L.Ed.2d 192 (1995)(release, which released "any and all causes of action of any nature whatsoever, at common law, statutory or otherwise," included fraud and securities law claims because release, by reference to stock purchase agreement, mentioned all claims involving undisclosed liabilities, a specific class of claims that included claims at issue).

A release discharges only those persons or entities that it names or specifically identifies. *McMillen v. Klingensmith,* 467 S.W.2d 193, 196 (Tex.1971). One can claim the protection of a release only if the release refers to him or her by name or with such descriptive particularity that his or her identity or connection with the event is not in doubt. *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 420 (Tex.1984). "The *McMillen* requirement of specific identification is not met unless the reference in the release is so particular that a stranger could readily identify the released party." *Id.* at 419.

By its own language, the release signed by Stafford applies to any "subsidiaries, affiliates, partners, predecessors and successors in interest and assigns" of Allstate Insurance Company. Elsewhere in the settlement agreement and release, Allstate is given the right to assign its obligation to Allstate Settlement Corporation. Allstate is also given the right to purchase an annuity from Allstate Life Insurance Company.

Given their similar names and their inclusion within the settlement agreement itself, even a stranger to the transaction would have little trouble identifying Allstate Settlement Corporation and Allstate Life Insurance Corporation as affiliates of Allstate Insurance Company. Therefore, the release is applicable to both Allstate Life Insurance Corporation and Allstate Settlement Corporation, as well as Allstate Insurance Company.

*(3) Stafford Has Alleged Sufficient Facts to Support Personal Standing as to the Nontransaction Defendants*

The parties agree that the release is not applicable to any of the Nontransaction Defendants—Allstate Indemnity Company, Allstate County Mutual Insurance Company, Allstate Texas Lloyds, and All-state Property and Casualty Company. The only question, then, is whether Stafford has pled sufficient facts to establish standing against those parties. We conclude she has.

Because standing is a component of subject-matter jurisdiction, we consider the plaintiffs' standing under the same standard by which we review subject-matter jurisdiction generally. That standard requires the pleader to allege facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993). We construe the pleadings in favor of the plaintiffs and look to the pleaders' intent. *Id.* If the plaintiffs lack standing, the trial court has no jurisdiction over the merits of the claim, and the entire cause must be dismissed. *Bell v. Moores,* 832 S.W.2d 749, 753–54 (Tex.App.-Houston [14th Dist.] 1992, writ denied).

To establish standing, a person must show a personal stake in the controversy. *Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex.1984). That is, they must allege personal injury fairly traceable to the defendant's unlawful conduct and likely to be redressed by the requested relief. *Brown v. Todd,* 53 S.W.3d 297, 305 (Tex.2001), citing *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).

Stafford alleges that a conspiracy existed among all of the named appellees. Stafford's third amended petition states,

Each of the Defendants participated in the misconduct complained of herein, as a primary participant, co-conspirator and/or aider-and-abettor. Defendants combined among themselves to accomplish a shared unlawful purpose—to make illegal profits by coercing Plaintiffs into accepting illegal structured settlements funded by annuities from Allstate Life and Allstate Settlement with

mutual aid and a tacit understanding in carrying it out, and committed the other acts alleged in this Petition and have damaged Plaintiff and the Class Members. Defendants are each responsible for all wrongdoing done by each and any of the other conspirators in furtherance of the unlawful combination(s).

Stafford further alleges that each appellee harmed Stafford personally by participating in the alleged conspiracy. Specifically, Stafford alleges in her petition,

> Each of the Defendants repeatedly and knowingly coerced Plaintiff and the Class into accepting structured settlements funded by annuities at lower than market and competitive rates, charged excessive fees and commissions, funded the annuities at amounts less than agreed to by Plaintiffs, and paid or accepted illegal rebates/kickbacks.

Additionally, the petition alleges,

> Defendants' wrongful plan, scheme and common course of conduct was designed to and did induce Plaintiffs and other members of the Class to enter into structured settlements funded by annuities with Allstate Life under unlawful circumstances, and through fraudulent means, to the detriment of Plaintiff and the Class members.

This language, as well as other language in Plaintiff's Third Amended Petition, is sufficient to allege that all the named appellees caused Stafford harm, not just those covered by the release. Although the remaining appellees are not alleged to have been directly involved in the original settlement agreement and release with Stafford, they are alleged to have harmed Stafford through their participation in a concerted scheme or plan.[4]

Stafford has alleged personal injury directly traceable to the remaining appellees' conduct. Therefore, she has pled sufficient allegations to support personal standing against the remaining appellees. As noted above, the parties do not claim that Stafford is otherwise barred from bringing suit against the remaining appellees.

Accordingly, we reverse the summary judgment as to Allstate Indemnity Company, Allstate Property and Casualty Company, Allstate County Mutual Insurance Company, and Allstate Texas Lloyds, and remand to the trial court for further proceedings.

### Conclusion

Because the release signed March 22, 1999, covers the claims made by Stafford in the present suit and covers Allstate Insurance Company, Allstate Life Insurance Company, and Allstate Settlement Corporation, we affirm the summary judgment in favor of those appellees. But, because Stafford has alleged sufficient facts to establish standing as to Allstate Indemnity Company, Allstate Property and Casualty Company, Allstate County Mutual Insurance Company, and Allstate Texas Lloyds, we reverse the summary judgment in favor of those appellees and remand this case to the trial court for further proceedings consistent with this opinion.

---

4. Appellees maintain that Stafford does not have standing to sue the remaining appellees because they were not involved in the original settlement. In support of this they cite, *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704 (Tex.2001). This case is distinguishable, however. The decision in *M.D. Anderson* rested on the court's finding that the plaintiff had not alleged any actual injury and therefore lacked standing to sue. Stafford, on the other hand, has alleged actual injuries caused as a result of a conspiracy between all of the named defendants. We are not, at this stage, to determine proof of, or ability to prove, the allegations, but only to assess what has been alleged.