

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-20-00070-CV

———————————————————

JOHN NGUYEN AND JESLYN TRAN, Appellants

V.

MINH NGUYEN AND NGA LE, Appellees

On Appeal from the 352nd District Court
Tarrant County, Texas
Trial Court No. 352-301461-18

Before Birdwell, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

Appellants John Nguyen and Jeslyn Tran (Managers) appeal from a summary judgment for appellees Minh Nguyen and Nga Le (Co-owners). Managers claim that the trial court erred by granting summary judgment for Co-owners based in large part on deemed admissions and that without those deemed admissions, they raised a genuine issue of material fact as to the damages element of Co-owners' claims. Managers also claim that they proved their affirmative defense that the dispute had been settled and that the trial court erred by awarding Co-owners attorney's fees. We affirm.

## Background

Because Managers' conduct during the suit bears on the trial court's deemed-admissions ruling, we set forth the procedural background in detail.

### The Lawsuit

In 2016, Managers and Co-owners agreed to form SJN Hollywood Nails & Spa LLC as an entity to own and operate Hollywood Nails & Spa. Co-owners owned 50% of SJN and were entitled to 50% of the profits from the business. Managers owned the other 50% and managed the business. "From the time SJN acquired [the business] in 2016 through March 2018, the [business] generated over $1.5 million for SJN (after paying its nail/beauty technicians)." Managers made numerous cash withdrawals from the business and admittedly did not "fully" pay Co-owners "for all of the distributions" Co-owners were "entitled to receive from SJN's profits."

2

In 2018, Co-owners began to realize that they had not been fully paid for all distributions to which they were entitled as owners of SJN. In June 2018, Co-owners and Managers agreed to take two-week turns managing the business and to provide each other with the total income and expenses for that two-week period; they also agreed (1) to change the locks on the storage facility where Managers had been keeping the business's records so that only Managers and Co-owners would have access, (2) that they would coordinate a time to go over the records together, and (3) that Co-owners could access the business's "POS system to access records." Finally, the parties agreed to sell the business to a buyer willing to pay at least $900,000 "with the distributions between the parties to be determined at a later date but before the sale."

On June 18, 2018, Minh tried to meet with John at the storage facility to go over the receipts, but John said there was no agreement to meet that day and that he would have to hear back from his lawyer to determine a day they could meet. Minh noticed that at least two-thirds of the sales-receipt records were missing, and John told him Co-owners "had taken them home." Consequently, Co-owners' attorney sent a letter to Managers' then-counsel indicating concern that Managers were engaging in delay so that they could hide and destroy records. The letter also asked Managers to replace any items taken from the storage facility and warned that further attempts to remove the stored records would be considered evidence spoliation.

The parties were not able to resolve matters, and in August 2018, Co-owners sued Managers to recover the full amount of unpaid distributions they claimed to be owed. Co-owners listed the following causes of action in their original petition—the only petition in the appellate record and referenced by the parties: breach of fiduciary duty, money had and received, violations of the Texas Business Organizations Code for failing to provide access to books and records, statutory fraud, negligent misrepresentation, and temporary and permanent injunctive relief. Tex. Bus. Orgs. Code Ann. §§ 3.153, 101.501–.02. Co-owners did not expressly state a claim for breach of the SJN agreement, but in a demand letter attached as an exhibit to the petition and incorporated into it by reference, Co-owners' counsel stated that she had been hired to bring a claim for "breach of the SJN . . . Company Agreement," among other things. Co-owners sought attorney's fees under Civil Practice and Remedies Code Sections 37.009 and 38.001, as well as Business and Commerce Code Section 27.01(e).

Co-owners attached discovery requests to their petition, which included eighty requests for admission (First Requests). The Precinct 6 Constable's office received citation for Managers on August 14, 2018, but did not effect service until October 16, 2018. Managers filed an answer with a general denial the same day.

**TRO Request**

The day before the constable served citation, Co-owners had filed an Application for Immediate Action and Relief, in which they alleged that since the suit

4

had been filed, Managers "verbally threatened and harassed [Co-owners] not to sue them, . . . disrupted the business . . . , and frightened the workers." Additionally, Co-owners alleged that a buyer had been found and that they anticipated an October 17, 2018 closing, but that Managers had threatened not to close unless Co-owners agreed not to sue them. Co-owners requested injunctive relief, as well as an order giving them sole authority to manage and sell the business, with the sale proceeds to be paid into the court's registry.

Minh filed an affidavit in connection with the application, in which he averred that when the parties formed SJN, Managers convinced Co-owners "to entrust all of the business operations and management of both SJN and [the business] . . . to them, promising [Co-owners] that they would operate both SJN and the [business] in a prudent and honest manner and make fair and equitable distributions to [Co-owners] whenever SJN had profits." According to Minh, Managers "designated John Nguyen as President, themselves as the only managers, and assumed full control and management of SJN and the [business], including but not limited to, [the] bank account and all other assets, accounting, bookkeeping, payroll, expenses, making distributions, paying taxes, etc."

According to Minh, when Co-owners began accessing the business's bank account in 2018, they noticed that not only had the [business] been profiting, . . . there was more than enough for [Managers] to make much bigger distributions" to them. He also averred that as of October 2018, Managers had "refused to grant [them] full

access to the records (in particular, the expenses for 2016 and 2017 and other records)" while claiming that "their cash [withdrawals] were for 'expenses' [without] disclos[ing] exactly what those expenses" were. Minh also stated that a previous prospective buyer had backed out of a sale, "telling [Co-owners] the reason being that [Managers] told the buyer the [business] was not profiting."

Minh opined that because of Managers' "mismanagement, and consequently, the rising tension between the parties, the [business had] suffered a decline and loss of six workers" as well as its entity status. Minh further averred that a new buyer had offered to buy the business for $780,000, "a sales price that [Managers] and [Co-owners] have all agreed to." However, in Minh's words, "With the sale expected to close on this week, we have now been told by the buyer that [Managers] have said that they will impede this sale unless we sign a letter agreeing not to sue them, which would mean relinquishing our right to seek justice." Minh feared that if the business were not sold, it would "continue to decline and lose workers to the point where it [would] be incapable of making a profit and no one would want to buy it."

Minh alleged that Managers had "tried to intimidate and threaten [Co-Owners] into . . . signing a letter not to sue." He related that during one of Co-owners' management periods, John "tried to pressure [them] into signing a covenant not to sue him and his wife . . . [and was] tr[ying] to start an argument regarding whom can serve as a receptionist when we are managing the Business." According to Minh, when Co-owners refused, John "became heated, raised his voice, and caused a

6

disturbance in the Business." They exchanged "some words," and John said in Vietnamese, "[I]f I die, you will die." Minh stated that John then "went outside[,] paced back and forth at the front door," and remained there until after closing time. Minh was afraid and asked an employee to walk him to his car. According to Minh, "[w]ith what [they had] seen and heard, [they] were . . . very scared and on guard" when leaving the house and when arriving at and leaving the business.

Managers moved for and obtained a continuance on the motion for emergency temporary relief, and the trial court set it for a hearing on October 25, 2018. But on October 24, 2018, Co-owners' counsel filed a Notice of Cancellation of Hearing on the application for immediate relief, asserting that the parties had reached a tentative agreement. Counsel did not give the court any details about that tentative agreement, however.

**First Summary Judgment Motion and Rule 91a Dismissal Motion**

Almost two months later, Co-owners filed a motion for summary judgment based on the First Requests, to which Managers had failed to respond. Managers responded by filing a Rule 91a motion to dismiss, claiming that the trial court lacked jurisdiction because the issues in controversy were moot, that the parties had contractually agreed to dismiss the case, that Co-owners were estopped to deny the settlement agreement, and that the motion for summary judgment had been brought in bad faith. In the alternative, Managers sought an additional thirty days to respond to discovery and to the motion for summary judgment.

7

Managers included with their motion to dismiss John's affidavit, in which he explained that Managers and Co-owners had met and come to an agreement about the dispute that they handwrote in Vietnamese, and then in English, and had both documents signed and notarized. Later that day, they signed a more comprehensive settlement agreement drafted by Co-owners' attorney. Attached to John's affidavit are a copy of an agreement purportedly in Vietnamese, with the English translation following, as well as the subsequent agreement drafted by Co-owners' attorney. The text of that agreement (Settlement Agreement) reads as follows:

AGREEMENT REGARDING THE SALE OF
HOLLYWOOD NAILS AND SPA

John Nguyen, Jeslyn Tran, Minh Nguyen, and Nga Le (collectively the "Parties"), current owners of SJN Hollywood Nails and Spa, LLC ("SJN"), which wholly owns and operates Hollywood Nails and Spa (the "Business") located at 6248 Camp Bowie Blvd[.], Fort Worth[,] Texas 76116, hereby agree to sell the Business at the price of SEVEN HUNDRED EIGHTY THOUSAND AND 00/l00 DOLLARS ($780,000.00), in which *sales proceeds* shall be split 50% going to John Nguyen and Jeslyn Tran and 50% to Minh Nguyen and Nga Le.

After the sale of Business is completed with [1] a sales price and [2] *SJN profit distributions* satisfactory to the Parties, the Parties agree to fully release one another, their agents and attorneys, from any and any [sic] and all past, present and future claims, liens, causes of action (including any previously filed or claimed), demands, damages, expenses, and compensation whatsoever, whether based on tort, contract, property damage, or other theory of recovery, which the undersigned now has or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen claims, expenses and damages, including but not limited to compensatory damages for and/or punitive damages, arising out of the Business, SJN, or any agreement or dealings between the Parties, and Minh Nguyen and Nga Le will dismiss the lawsuit styled Cause No. 352-301461-18, Minh

Nguyen and Nga Le v. John Nguyen and Jeslyn Tran, [i]n the 352nd District Court, Tarrant County, Texas.

> [T]he Parties agree that this Agreement shall supersede and take precedence over any []other agreements between the Parties dated October 24, 2018 or prior[.]

[Emphasis added.]

Managers also attached to their motion to dismiss an affidavit from their then-attorney, in which he averred,

> It is and was my belief that once the parties' business, Hollywood Nails and Spa, was sold, and the proceeds therefrom split in accordance with the contract, which occurred on October 26, 2018, the suit between the parties had been fully compromised and settled, and that there was no issue to be resolved and no need to respond to Plaintiffs' requests for discovery. Then, to my disbelief, Plaintiffs filed their Motion for Summary Judgment bas[ed] upon un-responded to Requests for Admissions and un-answered discovery.

Attached to his affidavit is an email with Co-owners' counsel discussing execution of the Settlement Agreement, in which Managers' then-counsel stated: "I will advise my client accordingly to execute. Do you want to suspend discovery otherwise I will have to do something? I don't like to wait." Co-owners' counsel responded, "I think this will all get resolved, but if it doesn't by mid-November, I have no problems giving you an extension."

Managers also attached an Asset Sale and Purchase Agreement "by and among" SJN, Managers and Co-owners individually, and TQN TX, LLC, pursuant to which TQN would purchase SJN's assets for $780,000. The closing date was to be October 26, 2018. According to John, the closing took place on that date.

9

In response to the motion to dismiss, Co-owners attached their counsel's affidavit, in which she averred,

> Because the Plaintiffs wanted to be sure that Defendants did not interpret the signing of the *Agreement Regarding the Sale of Hollywood Nails and Spa* to mean that all issues between the parties had been resolved, the second paragraph specifically states the parties agree to a mutual release and that Plaintiffs would dismiss the pending lawsuit only "After the sale of Business is completed with a sales price <u>and SJN profit distributions satisfactory to the Parties</u> (emphasis added)."

Counsel further stated that, "[t]o this day, the parties have not been able to come to an agreement relating to SJN profit distributions." Attached to her affidavit is an email exchange with Managers' then-counsel dated November 7, 2018—after the closing—in which she calculated "the amounts owed by Defendants to the company for the years 2016, 2017, and 2018 using the figures [Co-owners] have been able to recently obtain from the Business's computer records and the expenses provided by . . . John" as "$434,207.55 . . . , half of which, **$217,103.78**, is owed directly to my clients as members holding 50% interest." He responded on November 24, 2018, "I sent it to them. Let me ask them if they have verified the numbers."

Nothing in the record shows that the trial court ruled on the motion to dismiss, but on January 24, 2019, it denied Co-owners' motion for summary judgment and gave Managers thirty days to respond to Co-owners' First Requests and other pending discovery.

That same day, Co-owners provided Managers' new counsel with courtesy copies of the First Requests and served a second set of requests for production and

second set of requests for admissions (Second Requests). Managers responded in some way to all pending discovery except for interrogatories for Jeslyn Tran and certain isolated parts of other interrogatories and requests for production; Co-owners contend that when Managers finally provided interrogatory answers for Tran, they were incomplete and contained improper objections.

**Motions to Compel and Contempt Motions**

On March 28, 2019, Co-owners moved to compel Managers to "fully and completely respond" to discovery. Co-owners attached their counsel's affidavit, in which she stated that although Managers' counsel had "dropped off" several sets of discovery responses at her office, he had omitted Tran's interrogatory responses, as well as "other information and documents," and that despite her communications with him about the missing discovery, Managers still had not provided it. Additionally, she complained that Managers' counsel would not serve discovery electronically. Attached to counsel's affidavit was a copy of an email exchange she had with Managers' counsel, in which he stated, "Mr. Nguyen is going to bring out the papers he has had in storage, hopefully on Wednesday, and we can set up a date for you to go through the papers. He says that there are a lot of papers and too many to copy."

In its order granting the motion to compel, the trial court found that Managers had "abused the discovery process in an attempt to hinder [Co-owners] from obtaining relevant information." The trial court also ordered payment of $962.50 to

Co-owners' counsel on "conclusion of litigation." The trial court's order contains the following warning:

> The Court sternly reprimands Defendants for their misconduct. Discovery is a fundamental right of litigants and is necessary for the effective administration of justice. By ignoring his obligations under the rules of discovery, Defendants interfered with at least one core function of the court (enforcement of judgment) and Defendants' misconduct will not be tolerated. Further misconduct will yield sanctions in the future, including the possibility of contempt.

Managers failed to timely comply with the trial court's order, and Co-owners moved for contempt. Co-owners supported their motion with affidavits from their counsel and from Minh. According to Minh, "As of the date of this affidavit, we still have not received any of the things required in the *Order Granting Plaintiffs' Motion to Compel Discovery Responses*." Co-owners also attached an email from their counsel to Managers' counsel specifying at least two categories of information still requested:

> - All itemized receipts/evidence showing any expenses Defendants are claiming they paid on behalf of the Business or SJN (shopping receipts, receipts/evidence justifying Defendants' cash withdrawals from the Business or SJN's accounts or monies, etc.), not just receipts showing how much was paid to the workers. Defendants specifically stated during our June 2018 meeting with both parties and their counsel present that Defendants kept all receipts to all the expenses to show they were legitimate, including for all purchases.
>
> - ADP records and access to the account for the Business and SJN, and anything which specifically shows the source of the money Defendants used to pay for their own personal income tax to the IRS . . . .

The trial court issued a show-cause order. After a hearing on May 2, 2019, the trial court found that "the parties should be given a final opportunity to resolve or

streamline th[e] discovery dispute without Court intervention." In its order, the trial court pointed the parties to *Dondi Properties Corp. v. Commerce Savings & Loan Ass'n*, 121 F.R.D. 284 (N.D. Tex. 1988), and to the Texas Lawyer's Creed for standards of discovery-related conduct. The trial court ordered lead counsel for both parties to "confer in-person in an attempt to resolve all matters in dispute" and to submit a joint status report so that the trial court could "determine the respective positions of each party regarding the subject matter of the dispute in a single written submission."

In the later-filed joint status report, the parties indicated that they had agreed "regarding all of the items in the" motion-to-compel order, and they requested an extension of the trial date until September 2019 "to allow the parties time to complete discovery and mediate." Before the parties could mediate, however, Co-owners filed a second motion to compel, in which they alleged that John had refused to answer certain questions in his June 2019 deposition "regarding transactions shown on certain business financial records that were presented to him (such as the bank statements for Hollywood Nails and Spa)" because "he could not verify whether the documents were authentic and that anyone could put the bank logo on anything." According to Co-owners, "[t]hese documents were the very ones produced by [Managers] in response to [Co-owners'] discovery requests." Co-owners also indicated that although their counsel had asked Managers' counsel on numerous occasions to electronically serve "all documents produced in response to [Co-owners'] discovery

13

requests in bates-labeled format and verified with [Managers'] notarized signatures," he had not done so.

In ruling on the second motion to compel, the trial judge took judicial notice of the file and granted the motion, finding that "John [had] abused the discovery process in an attempt to hinder [Co-owners] from obtaining relevant and pertinent information by refusing to answer questions during his deposition pertaining to business transactions and records." The court also found that Managers, "by electronically serving all discovery responses and documents produced in bates-labeled and verified format, would clear any confusion as to what discovery was in fact produced by" Managers. The court ordered Managers to produce the discovery in the proper format "no later than August 9, 2019," ordered Managers to "answer all questions relating to Hollywood Nails Salon and Spa or the records produced by [Managers] without any objection or reservation (other than those protected by attorney[–]client or spousal privilege)," and ordered payment of $612.50 to Co-owners' counsel. The trial court included the same discovery-misconduct reprimand language from the prior motion-to-compel order, this time naming John specifically.

On August 13, 2019, Managers' counsel filed a motion seeking an extension of time to comply with the second order to compel. He stated that he had been unable to return to work after his wife's surgery because he had been her sole caregiver during her recovery after she was released from the hospital on July 28, 2019. He also explained,

Defendants' Counsel[] has never provided Bates-Labeled documents and does not have the equipment to perform such tasks and has obtained the services of Fedx Kinkos to label and scan the documents requested with an estimated delivery date of August 14, 2019, at which time Defendants are to verify the documents before a notary public. Further, Defendants' Counsel does not have the ability to electronically serve all responses and documents except through providing Plaintiffs a Thumb Drive with the stored documents. And [counsel] requests that the court find[] that the Thumb Drive complies with the Court's Order to "electronically serve all responses and documents."

The trial court did not sign an order.

Co-owners filed a second motion for contempt, alleging that Managers had failed to pay the ordered attorney's fee and had failed to electronically serve all responses and documents responsive to the discovery requests. They attached their attorney's affidavit in which she averred she had not been paid the $612.50 and that Managers' attorney had "chose[n] to hand deliver a flash drive of [Managers'] discovery responses and documents, without any verified/notarized signatures, on August 14, 2019, completely contrary to the" order. The trial court issued a show-cause order but did not hold Managers in contempt. From the appellate record, it appears that Managers' counsel never electronically served the discovery.

**Second Motion for Summary Judgment**

The trial court ordered the parties to mediation, and the parties mediated in October 2019. Although the mediator informed the trial court that "an agreement was not reached in our meeting," she believed it would be "premature to declare an impasse in that the parties are *continuing with their discovery*." [Emphasis added.]

After the mediation, Co-owners served additional discovery, including Third Requests for Admissions (Third Requests), which Co-owners served on Managers' attorney on November 20, 2019, and which were due on December 20, 2019. The docket sheet notes that the parties entered into an agreed scheduling order in December 2019, but that order is not included in the appellate record. Managers did not respond to the Third Requests.

On January 2, 2020, Managers filed a Defendant's Original Answer[1] containing a general denial and affirmative defenses based largely on the Settlement Agreement: accord and satisfaction ("[SJN] was sold and sales price divided in accordance with such agreements."), estoppel ("[T]he parties settled this case and agreed to discharge each other from liability for [SJN] and cannot now seek to sue for any damages."), payment ("All of [SJN's] liabilities have been paid, [SJN] sold and the proceeds divided in accordance with the written agreement of the parties."), unclean hands ("[Co-owners] represented to [Managers] that this case had been settled and all liability extinguished, and then continued on with the suit."), and breach of the Settlement Agreement. Managers also raised the following verified pleas that were contrary to admissions they had made in answering the First Requests: they alleged that Minh lacks capacity and standing to sue because he "is not an owner of the company about which this suit is brought" and that "there is a defect of parties"

---

[1]Because Managers had already filed an answer, this pleading was more in the nature of an amended or supplemental answer. *See* Tex. R. Civ. P. 71.

because "[a]t some point in the process of establishing the company, Stephen Nguyen's name replaced that of" Minh's. Managers did not bring a counterclaim for breach of the Settlement Agreement, but they did seek attorney's fees because "under the provisions of the Civil Practice and Remedies Code, this case is brought for Breach of Contract among other requests for relief."

The next day, Co-owners filed an amended motion for summary judgment, based on Managers' answers to their First Requests as well as the deemed admissions to their Third Requests. The motion did not expressly address any of Managers' affirmative defenses.

Managers responded to the motion, contending (1) that the case had been settled and the proceeds had already been divided according to the Settlement Agreement's terms; (2) that many of the "deemed" admissions from the Third Requests were duplicates of those in the First Requests and Second Requests and had thus already been asked and answered; (3) that damages were unliquidated and the summary judgment evidence did not prove the damages amounts; and (4) that Co-owners had not shown any statutory authority for their requested attorney's fees and had not proved that the fees they sought by affidavit were reasonable and necessary. Managers did not expressly request to withdraw the deemed Third Requests but appeared to argue that they had responded to them by the time the summary judgment response was filed.

17

Managers' response relied on (1) affidavits from John and Managers' former counsel to explain the circumstances of the Settlement Agreement's execution; (2) the affidavit of a CPA who had reviewed the business's financial records and who—in the words used in the response—had "the opinion that the accounting information upon which Plaintiffs rely . . . is accurate";[2] and (3) Managers' then-attorney's affidavit "stating why response to discovery was not timely made."

The CPA averred in her affidavit that she had reviewed computer summaries of "Total Sales Reports," bank statements, checks, W2s, 1099s, and tax returns for SJN for 2018, and Total Sales Reports, W2s, 1099s, and tax returns for 2016 and 2017. After doing so, she concluded that "the computerized tapes shown as 'Total Sales Reports,'" which purport to be the summaries of the business's income, "do not reflect amounts that coincide with the totals of the Bank Statements, W2 reports[,] and 1099 reports issued to employees and contract laborers, and the checks issued to such workers and the tax return of SJN . . . for the twelve months ended 2018." She stated that in her professional opinion, the Total Sales Reports "are not accurate and cannot be relied upon to provide accurate financial information concerning the sales receipts" of the business, "making it difficult, if not impossible, to determine the actual income and expenses of the business, and the net profits that were to be split equally between the owners."

Managers' counsel averred the following in his affidavit:

_____

[2]This statement appears to be a typo.

"On November 20, 2019, Plaintiffs' attorney filed through e-service 'Plaintiffs' Consolidated Discovery Requests.' I did not see the filing come in and was unaware of it until Plaintiffs filed their Motion for Summary Judgment and discovered that it, in fact, had been filed. During the time, beginning the following week after discovery was filed, I became sick, with a pneumonia/asthma like condition, [sic] in fact at a status conference in this case on December 6, 2019, both Plaintiffs' attorney and I were ill with similar symptoms.

"The following weeks I did not work because is [sic] was ill with coughing and runny nose. My condition was so bad that my doctor debated putting me in the hospital so that the medicine could be delivered intravenously, but decided I would probably be better off at home. I finally started feeling better Christmas week, after the discovery due date. Even if I had seen the discovery requests, I could not have answered them.

"Since receiving Plaintiffs' Motion for Summary Judgment, I worked hard to supplement all of the Discovery by the due date of January 10, 2020. Again I, did not see the Request for Discovery until I saw it attached to Plaintiffs' Motion for Summary Judgment."

In their reply, Co-owners presented documentation from the e-filing service provider showing that the discovery electronically served on Managers' counsel was opened by him (or someone using his email) on November 20, 2019, at 12:33 p.m. Therefore, they argued that Managers had not shown good cause that would allow them to withdraw those deemed admissions and that this evidence, as well as Managers' past pattern of discovery abuse, shows that Managers intentionally chose not to answer the discovery.

After a hearing, a record of which was not provided by Managers on appeal, the trial court signed a final judgment, in which it granted the summary judgment motion. The trial court's judgment states that the judge took judicial notice of the file

19

and considered "all timely filed pleadings, all timely filed and competent summary judgment evidence," and "the arguments of counsel." The trial court also made the following findings: (1) that the admissions in the Third Requests had been deemed admitted and (2) that "[b]ased on [the] deemed admissions, [Managers'] direct admission[s], other evidence submitted by [Co-owners], and the documents on file," Co-owners showed that "the facts support all the elements for [their] causes of action . . . for breach of contract, breach of fiduciary duty, disgorgement, money had and received, violation of the Texas Business Organizations Code, statutory fraud, and negligent misrepresentation." The court awarded Co-owners damages of $217,103.78 and attorney's fees of $26,500. This appeal followed.

## Issues on Appeal

Managers raise the following issues on appeal:

° "The Trial Court erred in granting Summary Judgment for [Co-owners] by ignoring the Parties' Written Agreements dated October 24, 2018, which contractually settled their dispute." According to Managers, "the net proceeds from the sale were equally divided between the parties in accordance with the contractual terms of the" Settlement Agreement, which should have ended the dispute, and Co-owners wrongfully continued the suit.

° "The Trial Court erred in deeming Plaintiffs' Request for Admissions to be admitted." Managers argue that their response to the motion for summary judgment shows that "there were many material issues of fact left to be determined and that the

lack of timely response . . . was not as a result of conscious indifference but that the electronic e-mail service on [Managers'] attorney was not seen when delivered." Managers contend that without the deemed admissions Co-owners did not conclusively prove the damages elements of their claims.

° "The Trial Court erred in granting Plaintiffs' Summary Judgment based on Deemed Admissions, most of which had previously been denied." According to Managers, "Many of the Requests in the first two sets of Requests were the same or very similar in content as Plaintiffs' Third Set of Requests"; thus, Co-owners should not have gotten a second bite at the apple.

° "The Trial Court erred in awarding Plaintiffs Attorney's fees." Managers argue that "[t]his cause of action was brought in torts and not contract and none of [the types of claims listed in Section] 38.001 . . . were alleged or pled."

**Standard of Review**

We review a summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all

essential elements of the claim. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). "In the context of a plaintiff's traditional motion for partial summary judgment to dispose of a defendant's affirmative defense, a plaintiff may prevail by conclusively negating at least one element of the defense." *Berry Contracting, L.P. v. Mann*, 549 S.W.3d 314, 322 (Tex. App.—Corpus Christi–Edinburg 2018, pet. denied).

Because Co-owners were not "using the summary judgment process to attack" Managers' affirmative defenses, they had the initial burden only to conclusively prove all essential elements of their own claims. *See Customer Ctr. of DFW Inc. v. RPAI N. Richland Hills Davis Ltd. P'ship*, No. 02-20-00189-CV, 2021 WL 2149623, at *2 (Tex. App.—Fort Worth May 27, 2021, no pet. h.) (mem. op.); *see also MMP, Ltd.*, 710 S.W.2d at 60; *Charles Glen Hyde, Nw. Reg'l Airport, Inc. v. Nw. Reg'l Airport Prop. Owners Ass'n, Inc.*, 583 S.W.3d 644, 648 (Tex. App.—Fort Worth 2018, pet. denied). Only if Co-owners had done so did Managers then have "the burden . . . to raise a genuine issue of material fact precluding summary judgment," *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018), as well as to present evidence sufficient to raise a fact issue on each element of any affirmative defense. *Customer Ctr. of DFW*, 2021 WL 2149623, at *2; *see Am. Petrofina, Inc. v. Allen*, 887 S.W.2d 829, 830 (Tex. 1994); *H & H Steel Fabricators, Inc. v. Wells Fargo Equip. Fin., Inc.*, No. 02-15-00391-CV, 2016 WL 6277371, at *5 (Tex. App.—Fort Worth Oct. 27, 2016, no pet.) (mem. op.).

## Co-owners' Claims

In their second and third issues, Managers contend that the trial court abused its discretion by not allowing them to withdraw their deemed admissions, without which Managers contend Co-owners failed to prove the damages elements of their claims. Managers claim that even though they never filed a motion to withdraw the deemed admissions, they sufficiently brought such a request to the trial court's attention. *See Wheeler v. Green*, 157 S.W.3d 439, 442 (Tex. 2005). They also claim that Co-owners' reliance on the Third Requests was improper because "[m]any of the [r]equests in the first two sets of [r]equests were the same or very similar in content" to the Third Requests. According to Managers, if this summary judgment were allowed to stand, "what a wise (or shady) litigant would need to do is keep filing requests in hopes that the other party might not respond timely, and use that non-response to obtain judgment."

Even if Managers' summary judgment response was sufficient to request withdrawal of the deemed admissions, the trial court did not abuse its discretion by finding that Managers had not shown good cause for withdrawal and that summary judgment could be based, in part, on the admissions in the Third Requests. Further, considering the deemed admissions, and the other summary judgment evidence—which includes Managers' answers to the First Requests—Co-owners conclusively proved the damages elements of their claims.

**Deemed Admissions**

If a party fails to timely respond to requests for admissions, the requests are deemed to be admitted. Tex. R. Civ. P. 198.2(c). A trial court may permit a party to withdraw deemed admissions if the party shows good cause for the withdrawal and if "the court finds that the parties relying upon the responses and deemed admissions will not be unduly prejudiced and that the presentation of the merits of the action will be subserved by permitting the party to amend or withdraw the admission." Tex. R. Civ. P. 198.3. When admissions are deemed as a discovery sanction to preclude a presentation of the merits, they implicate the same due process concerns as other case-ending discovery sanctions. *Marino v. King*, 355 S.W.3d 629, 632 (Tex. 2011). Thus, to substantiate a summary judgment based solely on deemed admissions, we determine whether the party relying on the deemed admissions has shown flagrant bad faith or callous disregard for the rules. *Id.* at 633. If such a showing is made, admissions of fact on file at the time of a summary judgment hearing are proper proof to support a motion for summary judgment. *See Dall. Drain Co. v. Welsh*, No. 05-14-00831-CV, 2015 WL 4114976, at *5 (Tex. App.—Dallas July 8, 2015, no pet.) (mem. op.). But a deemed admission involving a purely legal issue is of no substantive evidentiary effect. *See id.*

A trial court has broad discretion in ruling on a request to withdraw deemed admissions. *Wheeler*, 157 S.W.3d at 443. An appellate court may set aside the trial court's ruling "only if, after reviewing the entire record, it is clear that the trial court

abused its discretion." *Stelly v. Papania*, 927 S.W.2d 620, 622 (Tex. 1996); *Saum v. Am. Express Nat'l Bank*, No. 02-19-00415-CV, 2021 WL 1034146, at *7 (Tex. App.—Fort Worth Mar. 18, 2021, pet. denied) (mem. op.).

A trial court does not abuse its discretion by finding a lack of good cause to withdraw deemed admissions when a party presents proof that the opposing party was properly electronically served with the admissions and did not timely respond, and the opposing party provides no proof of nonreceipt. *See In re City Info Experts, LLC*, No. 01-20-00364-CV, 2020 WL 6435782, at *11 (Tex. App.—Houston [1st Dist.] Nov. 3, 2020, orig. proceeding) (mem. op.) (noting that under Rule of Civil Procedure 21a(b)(3), electronic service is complete upon transmission to the e-filing service provider); *Garcha v. Chatha*, No. 05-17-00084-CV, 2018 WL 1755391, at *3 (Tex. App.—Dallas Apr. 12, 2018, no pet.) (mem. op.) (holding that trial court did not abuse its discretion by refusing to withdraw deemed admissions when discovery was properly served initially on Garcha, and then emailed to counsel after Garcha hired him, and counsel attempted to blame the lack of response on a departing associate and, alternatively, the way counsel had programmed his own email system).

Presuming that the Managers' summary judgment response can be construed as seeking withdrawal of the deemed admissions, we do not believe the trial court abused its discretion by impliedly finding that they did not meet the Rule 198.3 standard to allow withdrawal of those deemed admissions.

Here, Co-owners provided proof that the admissions were properly electronically served on Managers' attorney and that someone at his email address opened them on the day they were served. And even though Managers' attorney averred that he became ill the week after the discovery was served and could not work in the weeks before the discovery was due, he admitted attending a status conference while ill, and the trial court was not required to believe his explanation, especially in light of the trial court's prior findings that Managers had engaged in prolonged discovery misconduct involving the withholding of discovery directly related to the matters sought to be admitted. We do not have a reporter's record from the summary judgment hearing to know what, if anything, was argued to the trial court in this regard. Moreover, based on Managers' significant pretrial discovery abuses and delay, of which the trial court took judicial notice, the trial court did not abuse its discretion by determining that Co-owners would be unduly prejudiced by allowing Managers to withdraw their deemed admissions.

Managers also take issue with Co-owners' serving a third set of requests, claiming that many of them are duplicates of the First Requests and Second Requests and that a party should not be allowed to keep serving discovery in an attempt to trap the opposing party into admitting facts by mistake. While the latter may be true, the record shows that is not what happened here. All but two of the admissions in the Third Requests are in response to the parties' mediation and to calculations made by a CPA hired by Managers. These events occurred after the First Requests and Second

Requests were served and answered but while Managers were still, as determined by the trial court, evading other discovery.

Although the Second Requests are not included in the appellate record, Co-owners attached both the answered First Requests and deemed Third Requests to their motion for summary judgment. In comparing the two, we note only two admissions that are general—rather than comprising specific responses to the mediation and CPA calculations—and that appear to duplicate the First Requests: (1) "Defendants have intentionally and wrongfully withheld Plaintiffs' share of the Company profits" and (2) "Defendants have no intention of paying Plaintiffs their fair share of the Business's profits that Defendants still owe." Considering that Managers had admitted in their First Requests that they had not paid Co-owners all their share of the business's profits and considering the prolonged discovery misconduct in which the trial court determined Managers engaged, we do not see how Managers were harmed by the repeat of these two questions. *See* Tex. R. App. P. 44.1(a). Therefore, the trial court did not abuse its discretion by deciding the summary judgment motion based in part on the deemed admissions.

The fact issues Managers claim to have raised challenge only the calculation of damages, not the other elements of Co-owners' claims. Because specific damage amounts were included in the deemed admissions, Managers' contrary evidence was inadmissible. *See Sadeghian v. Wright*, No. 06-18-00062-CV, 2019 WL 255741, at *3 (Tex. App.—Texarkana Jan. 18, 2019, pets. denied) (mem. op.) ("[A]dmissions, once

made or deemed by the court, may not be contradicted by any evidence, whether in the form of live testimony or summary judgment affidavits." (quoting *Luke v. Unifund CCR Partners*, No. 02-06-00444-CV, 2007 WL 2460327, at *2 (Tex. App.—Fort Worth Aug. 31, 2007, no pet.) (mem. op.))). Thus, Managers did not raise a fact issue on damages.

We overrule Managers' second and third issues.

**Release**

In their first issue, Managers argue that the trial court erred by granting Co-owners summary judgment because they proved their affirmative defense that the suit had been fully settled in accordance with the Settlement Agreement, which they claim obligated Co-owners to release all their claims in the suit.

A release extinguishes a claim or cause of action to which it applies and is an absolute bar to any right of action on the released matter. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). Thus, the releasing instrument must "mention" the claim to be released. *Victoria Bank & Tr. Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991); *see Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692, 697–98 (Tex. 2000). Claims not clearly within the subject matter of the release are not discharged, even if those claims exist when the release is executed. *Keck*, 20 S.W.3d at 698. It is not necessary, however, for the parties to anticipate and explicitly identify every potential cause of action relating to the subject matter of the

28

release. *Id.* Although releases include claims existing at the time of execution, they may also include unknown claims and damages that develop in the future. *See id.*

As a contract, the Settlement Agreement is subject to the normal rules of contract construction, including the rules of ambiguity. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ins. Co. of N. Am.*, 955 S.W.2d 120, 127 (Tex. App.—Houston [14th Dist.] 1997), *aff'd*, 20 S.W.3d 692 (Tex. 2000). In construing a release, as with other contracts, the primary effort is to ascertain and give effect to the intention of the parties to the release, considering the instrument as a whole. *Stafford v. Allstate Life Ins.*, 175 S.W.3d 537, 541 (Tex. App.—Texarkana 2005, no pet.) (reasoning that a contract must be read as a whole rather than isolating a certain phrase, sentence, or section of the agreement). The contract's language is to be given its plain grammatical meaning unless doing so would defeat the parties' intent. *Id.*

The plain language of the Settlement Agreement shows that in the first paragraph, the parties agreed to sell the business and split the "sales proceeds." But the release language in the second paragraph is contingent on the completion of the sale "with a sales price and *SJN profit distributions* [not "sales proceeds"] satisfactory to the [p]arties." [Emphasis added.] Thus, the Settlement Agreement's language evidences the parties' intent to release the claims in the suit not only when the business was sold and the sales proceeds split in half, but also when the parties were able to agree on an acceptable profit distribution, the subject of the suit. Nothing in Managers' summary judgment responsive evidence indicates that the parties agreed on

29

profit distributions so as to satisfy the release's prerequisite. We therefore overrule Managers' first issue.

**Propriety of Attorney's Fees**

In their fourth issue, Managers challenge the basis of the attorney's fees award. Managers contend that "[t]his cause of action was brought in torts and not contract" and, thus, that Co-owners were not entitled to attorney's fees under Section 38.001 of the Civil Practice and Remedies Code. Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8). But Managers judicially admitted in their original answer that a breach of contract claim was at issue. *See, e.g.*, *Lee v. Lee*, 43 S.W.3d 636, 641–42 (Tex. App.—Fort Worth 2001, no pet.) (providing standard for when party is deemed to have judicially admitted a fact); *see also Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896–97 (Tex. 2000) (noting that Texas follows "fair notice" standard for pleadings, which looks to whether pleading alleges sufficient facts for opposing party to prepare a defense). We therefore overrule Managers' fourth issue.

## Conclusion

Because we have overruled Managers' four issues, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: August 26, 2021

30